UNITED STATES, *for use of* CROLL, *v.* JACK.

1  CONTRACTS — CONSTRUCTION OF PUBLIC BUILDINGS — CONTRACT OR'S BOND—RIGHTS OF SUBCONTRACTOR.
   Under 28 U. S. Stat. chap. 280, p. 278, which provides that persons contracting with the United States for the construction or repair of any public building shall execute a bond for the payment of "all persons supplying them labor and materials in the prosecution of the work," a subcontractor who furnishes such labor and materials is within the protection of the bond so given.

2. SAME — APPROVAL OF ARCHITECT — PERFORMANCE RENDERED IMPOSSIBLE.
   One furnishing materials for the prosecution of such a work is entitled to the protection of the contractor's bond to the extent of the value of such materials, although a portion thereof are attached in transit by creditors of the contractor; and this notwithstanding the supervising architect's approval of such materials, when in place, was made a condition precedent to payment therefor.

Error to Jackson; Peck, J.   Submitted April 3, 1900. Decided May 18, 1900.

*Assumpsit* by the United States, for the use and benefit of Edward L. Croll, against Robert M. Jack and Daniel F. Jack, copartners as Robert M. Jack & Son, as principals, and Henry Hayden, James E. Barrett, George H. Porter, Wright H. Calkins, and John E. Kennedy, as

sureties, upon a statutory bond. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Reversed.

By an act providing for the protection of persons furnishing materials and labor for the construction of public works, approved August 13, 1894, Congress provided:

"That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor, and furnishing affidavit to the department under the direction of which said work is being or has been prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond, upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties, and to prosecute the same to final judgment and execution." 28 U. S. Stat. chap. 280, p. 278.

On the 18th of May, 1895, the defendants Jack & Son entered into a contract with the government, acting through the supervising architect of the treasury, by which Jack & Son undertook to furnish all labor and materials for the interior finish of the post-office building in Columbus, Ga., for the price of $10,700. At the same time the defendants Jack & Son as principals, and the other defendants as sureties, entered into a bond for the faithful performance of the contract, and containing also a condition that the contractors should "promptly make payments to all persons supplying them labor or materials in

the prosecution of the work contemplated by said contract."
In November, 1895, Jack & Son entered into a contract
with plaintiff, who resides and is engaged in business at
Middletown, Pa.   The plaintiff by this contract undertook
to furnish all labor and materials necessary for the interior
finish in the following manner, namely:

"Do all mill work and put same together according to
plans and specifications furnished by the supervising
architect, and all work to be made to the entire satisfac-
tion of the supervising architect.   The party of the
second part further agrees to furnish all the frame pulleys,
give all the interior work one coat of an approved filler
and one coat of hard oil, all to be loaded on board cars at
Middletown, Dauphin county, Pa., for the sum of thirty-
eight hundred dollars."

The contract further provides that the second party
(Croll) agrees to push the work to completion without
delay, and, further:

"The party of the first part agrees to pay the thirty-
eight hundred dollars in payments as follows: Ninety per
cent. in monthly payments of the work shipped and in
place, and the remaining ten per cent. after the final ac-
ceptance by the supervising architect or his authorized
agent."

The plaintiff commenced work on the interior finish
and material referred to, and prepared specially for use in
said building to the amount and value of about $2,263.06.
He received in cash to apply on said contract the sum
of $300.   The first car load was shipped about January
11, 1896, and amounted in value to $960.59.   The second
car load was shipped February 29, 1896, and was worth,
under the contract, $1,267.25.   Nearly all of the interior
finish shipped in the first car load was actually placed in
position in the building.   The testimony further shows
that in March, 1896, the government took possession of
the building, and stopped work on the part of Jack &
Son, because of their failure to diligently prosecute the
work; that the creditors of Jack & Son attached the
second car load at Columbus, Ga., while it was still in

possession of the railroad company, and before delivery to Jack & Son; that said creditors obtained execution, and sold said car load of lumber; that the plaintiff afterwards made a contract with the government to permit him to furnish such interior finish as was then necessary, and that the plaintiff afterwards bought back the second car load of the interior finish from the party who had purchased it upon execution sale, and it was used in the building; that none of the second car load shipped to Jack & Son by the plaintiff went into the building until after plaintiff had bought it from the execution purchaser, and sold it directly to the government.

The record presents two questions:

1. Is the plaintiff entitled to recover on this bond?
2. If he is so entitled, can he recover for the car of material actually shipped, but not put in place by defendants Jack & Son?

The circuit judge decided both these questions in the negative, and directed a verdict for defendants. Plaintiff brings error.

*Forrest C. Badgley* and *James A. Parkinson*, for appellant.

*Wilson & Cobb* and *Richard Price*, for appellees.

MONTGOMERY, C. J. (*after stating the facts*). 1. The ground upon which the main question appears to have been decided is that the statute does not protect subcontractors, and that plaintiff is a subcontractor, within the ruling in *Avery* v. *Board of Sup'rs of Ionia Co.*, 71 Mich. 538 (39 N. W. 742); *People* v. *Cotteral*, 119 Mich. 27 (77 N. W. 322). These cases hold that one occupying such a relation to the principal contract as that held by the plaintiff in this case is a subcontractor. It would follow, therefore, that if the act in question, and the bond given in pursuance to its provisions, do not protect a subcontractor, these cases should be held decisive. There has been, so far as we are advised, no interpretation of

this statute by the federal courts which is of aid in determining this question. It is contended, however, that our own *decisions above cited* rule this question in favor of defendants. The case of *Avery* v. *Board of Sup'rs of Ionia Co.*, which the *Cotteral Case* follows, construes a statute materially different from the one under consideration. The statute is section 10744, 3 Comp. Laws 1897. The condition of the bond required is "for the payment by such contractor *or any subcontractor* * * * of all indebtedness which may accrue to any person, firm, or corporation on account of any labor performed or materials furnished," etc. In the *Avery Case*, above cited, much stress is properly placed on the italicized words of the statute above quoted. It was held that the bond required was not for the protection of subcontractors, "but to protect material men and laborers at the hands of the contractor and subcontractor." In this case the statute attempts to protect all persons supplying the contractor or contractors labor and materials in the prosecution of the work provided for in such contract. The language could not well be more comprehensive, and, as there is nothing in the statute which directly or by fair implication excludes such subcontractors, we think it should be held to include such subcontractors as supply labor and materials in the prosecution of the work.

2. The plaintiff under his contract made a shipment of material to be used in the building, which, through no fault of plaintiff, was seized under a writ against Jack & Son. Such material was furnished for the prosecution of the work, and the plaintiff is within the protection of the bond to the extent of the value of such material, unless it be held that, as the contract provides for payment only after the work and material are accepted by the supervising architect, nothing is due to the plaintiff on account of the same. This is contended, and cases like *Hanley* v. *Walker*, 79 Mich. 607 (45 N. W. 57, 8 L. R. A. 207), and *Boots* v. *Steinberg*, 100 Mich. 134 (58 N. W. 657), are cited in support of this contention. These cases are not

authority for the doctrine that, where the contract purchaser has put it beyond the power of the vendor to furnish evidence of inspection or approval by an arbiter, the vendor must lose the goods, nor does such a rule commend itself to our ideas of justice. We think, to the extent of the value of the goods in their condition when seized, the plaintiff is entitled to recover, as they were furnished, so far as it was possible to do so, under the contract.

Judgment will be reversed, with costs, and a new trial ordered.

The other Justices concurred.