## L. W. DAWSON v. NORTHWESTERN CONTRUCTION COMPANY AND OTHERS.[1]

### July 6, 1917.

### Nos. 20,262, 20,392, 20,452—(60, 209, 232).

**Highway.**

This action was brought to recover for work done by plaintiff under a contract with defendant construction company for the construction of a portion of a state road which the company was under contract with the county of Itasca to build. Defendant casualty company was the surety on the bond of the construction company. Pursuant to an order of the court various individuals, having claims for labor, material or tools furnished for the work, were made parties defendant and filed pleadings setting forth their respective claims. Plaintiff's case was tried to a jury, and a verdict rendered in his favor. The cases of the claimants were tried to the court. Defendants construction company and casualty company appealed, two of the claimants appealed from a disallowance in part of their claims. It is *held*:

### Plaintiff's Case.

**Road contract — mistake in final estimate of engineer not binding on plaintiff.**

(1) The evidence warranted the jury in finding that there was a gross mistake in the final estimate of the engineer as to the earth moved and the overhaul sufficient to relieve plaintiff from a provision in his contract that the final estimate of the engineer should be binding.

**Amount of earth moved — verdict sustained.**

(2) The evidence justified the verdict as to the amount of earth moved by plaintiff and the overhaul thereon.

**Evidence — memoranda admissible.**

(3) Memoranda consisting of slips on which were noted the number of cars of earth moved by plaintiff, were, under the facts stated in the opinion, properly received in evidence.

**Evidence admissible.**

(4) There was no error in permitting plaintiff and two of his wit-

[1] Reported in 163 N. W. 772.

.nesses to testify as to the contents of the cars, or as to the relative bulk of freshly dug earth and earth in the pit.

### Evidence of expert admissible.

(5) There was no error in receiving the evidence of an expert witness as to a method of estimating the amount of overhaul on the earth moved by plaintiff over and above the estimate of the engineer. The evidence does not show that the method was not likely to produce a fairly accurate result, and the jury was justified in adopting it.

### Charge to jury — amount of overhaul — words construed.

(6) A statement in the court's charge as to the amount of overhaul *held*, in the absence of exception at the time or calling attention of the court to the language used, to be merely a statement of plaintiff's claim, and not a direction to the jury.

### Leave of court to bring action — waiver by defendants.

(7) Plaintiff did not obtain leave of court before bringing action on the bond. Conceding that G. S. 1913, § 8244, applies, and that it was necessary to obtain such leave, defendants waived the point by not raising it by demurrer or answer.

### As to the Claimants.

### Bond — notice to surety by claimants unnecessary.

(1) Not being plaintiffs in the action, but being brought in as defendants by order of the court, it was not necessary for each claimant, before he could have the benefit of the bond, to give the surety notice of his claim under G. S. 1913, §8249.

### Liability of surety for rental value of horses.

(2) Under the language of G. S. 1913, § 8245, and the terms of the bond, the surety is liable for the rental value of horses necessarily used on the work, though the claims therefor do not include the services of teamsters.

### Liability of surety for injured horses.

(3) The bond is not liable for horses killed or injured on the work, or for return freight on equipment leased by the contractor.

### Deposit in court divided pro rata — recovery of balance from surety.

(4) The court properly held that plaintiff and the various claimants should share *pro rata* in a fund deposited in court by the county, the amount due by it to the original contractors, and recover the balance of their claims from the surety on the bond.

Action in the district court for Itasca county against Northwestern

Construction Company and Maryland Surety Company to recover $15,489.09 for work done upon State Road No. 2 under plaintiff's contract with the construction company. Defendant county of Itasca filed its answer, and its prayer that it be allowed to pay $15,701.05 into court and the various claimants for the money be substituted as defendants, was granted. The case between plaintiff and the construction and surety companies was tried before Wright, J., and a jury which returned a verdict for $14,594.64 in favor of plaintiff. From an order denying their separate motions for amended findings and conclusions or for a new trial, defendant construction company and defendant surety company appealed. Affirmed.

The case between the claimants and the construction and surety companies was tried before the court, who made findings, adopting the jury's verdict, and determining the amount due to the several inpleaded defendants. The motion of the construction and surety companies for amended findings was granted in part and denied in part; their motion for a new trial was denied. From the order denying their motion, the construction and surety companies, and Engstrom & Hosford and Ord Company, impleaded, appealed. Affirmed.

*Abbott, MacPherran & Gilbert, Fryberger, Fulton & Spear* and *Lathers & Hoag,* for appellants.

*C. C. McCarthy, Taylor & Anderson, Thwing & Rossman, R. A. McOuat* and *Thomas J. McKeon,* for respondents.

BUNN, J.

Defendant Northwestern Construction Company, a copartnership, contracted with the county of Itasca for the construction of State Road No. 2. Plaintiff, L. W. Dawson, contracted with the construction company to build sections B and C of this road in accordance with the original plans and specifications, except that plaintiff was to receive 30 cents per cubic yard for earth moved 500 feet or less, and one cent per cubic yard for each 100 feet such earth was hauled over 500 feet. These prices were somewhat less than those specified to be received from the county by the construction company. Plaintiff's contract provided that the statement of quantities moved and work done made by the engineer in charge at the completion of the work should be final.

Defendant Maryland Casualty Company was the surety on the bond of the construction company.

The contract for the building of the road was completed December 11, 1915, and the final estimate of the engineer as to quantities of earth moved and work done by plaintiff Dawson on sections B and C, showed 9,253 cubic yards of grading at 30 cents per cubic yard, amounting to $2,776.05; 1,285,196 cubic yards of overhaul at one cent, amounting to $12,851.96 and extra work amounting to $389.95, making a total for all work done by plaintiff according to the engineer's estimate of $16,017, of which sum $3,828.70 was paid plaintiff, and the balance is admitted to be due him less certain offsets.

Plaintiff brought this action, alleging that he moved 11,240 cubic yards of earth, at the contract price of 30 cents per yard, that the overhaul amounted to $15,564.84, and the extra work being $389.95 as allowed. He credited the payment of $3,828.70, and demanded judgment for the balance of $15,489.09 with interest. The partnership Northwestern Construction Company, and the individuals composing it, the county of Itasca and its commissioners, and Maryland Casualty Company, were made defendants. On the coming in of the answer of the county of Itasca and its board of county commissioners, and on the motion of these defendants, the court made an order permitting the county to pay into court the sum of $15,701.05, admitted to be due to the construction company, and substituting as defendants certain corporations and individuals having claims against the fund. These claimants were ordered to file their answers setting forth their claims to the fund within 20 days. The money was paid into court and the county discharged from all liability as ordered. The claimants answered. Insofar as their claims are involved on this appeal we will state what they are later. Defendant Maryland Casualty Company, the surety on the bond of the construction company, answered the complaint of plaintiff and the claims of the impleaded defendants. The construction company also answered. Plaintiff replied to these answers.

It is sufficient to say, as to the case between plaintiff Dawson and these answering defendants, that the issues made by the pleadings and tried were these: (1) Was plaintiff bound by the statement of earth moved and work done made in the final estimate of the engineer? (2) If

not, what were the quantities of earth moved by plaintiff and the over-haul? These issues were tried to a jury. There was a verdict of $14,594.64 in favor of the plaintiff and against both defendants. This was somewhat less than claimed by plaintiff in his complaint, and over $2,400 in excess of the sum admitted by defendants to be due plaintiff according to the engineer's estimate. The verdict neces-sarily involved a finding by the jury that plaintiff was not bound by the engineer's estimate, and that he had succeeded in proving the quanti-ties of earth moved and the overhaul.

Defendants moved for judgment notwithstanding the verdict or for a new trial, and appealed from the order denying this motion. The case as between the substituted or impleaded defendants, claimants, and the construction company and casualty company, was tried later before the court without a jury upon the evidence in the case tried by the jury and upon proofs and stipulations as to the respective claims. The court made findings of fact and conclusions of law, adopting the verdict of the jury as to plaintiff's case, and deciding as to the various claims of the impleaded defendants as will be hereafter stated. Defendants construction company and casualty company moved for amended findings and conclusions, and for a new trial in the event such motion was denied. The court amended the findings in certain particulars, but otherwise denied the motion, and the defendants named appealed from the order. There are also appeals by two of the claimants.

We will first consider the case as between plaintiff Dawson and the defendants construction company and casualty company, then the claims of the respective impleaded defendants, claimants against the fund and the bond, and then the claims of the impleaded defendants which were disallowed by the trial court.

## I
### Plaintiff's Case.

1. The first claim of appellants is that plaintiff cannot recover any sum in excess of that admitted to be due, as shown by the final esti-mate of the engineer. This claim is based upon the clause in the contract that it was "agreed that the statement of quantities moved

and work done issued by the engineer shall be final as between the parties hereto." Plaintiff's theory on the trial was that there was such gross mistake as amounts to fraud in the estimate of the engineer as to the earth moved and the overhaul. He contends now that the evidence was sufficient to make this a question for the jury and to warrant the verdict. Defendants contend otherwise. Though counsel for plaintiff argues a question of pleading, the complaint not referring to the engineer's report or alleging mistakes, we do not discover that appellants claim that it was necessary to allege mistake in the complaint. We certainly think they would not be justified in so claiming. The finality of the engineer's report was defensive matter, and the issue on this raised in the answer was properly met by a reply alleging gross mistake.

Was there evidence reasonably tending to show such a gross mistake in the engineer's estimate as under our decisions removes that bar to plaintiff's recovery? There is no disagreement as to what the law is. The facts which the evidence tended to establish may be briefly stated as follows:

The discrepancy between the claims of plaintiff as to earth moved and overhaul, and the final estimate of the engineer amounted to more than $3,000. If plaintiff's claims are correct or substantially so, it necessarily follows that there was a mistake in the engineer's estimate, and a mistake so gross as to permit recovery for the work actually done notwithstanding the engineer's estimate and the agreement that it should be final. Practically the entire discrepancy is over the quantities of earth removed from a certain pit, and the overhaul on that earth. This pit, unlike others from which earth was taken for the surfacing of the highway, extended out from the right of way of the road into private property for a considerable distance. The evidence showed that only that part of this pit that lay in the right of way was surveyed and cross-sectioned by the engineer. It warranted the jury in finding that the final estimate of the earth removed from this pit outside of the right of way and the overhaul thereon was at least partly guess work. The evidence was conflicting as to what the contour of the ground was, whether or not there was a hill, before the earth was removed. It is plain enough that whether there

was a gross mistake, so as to amount to fraud or bad faith, in the engineer's estimate, depends wholly on the evidence as to the earth actually removed by plaintiff from the pit in question, and the distance it was hauled. If the evidence justified the jury in its finding of the amount of work done by plaintiff under his contract, it follows that the estimate of the engineer is not final or binding. Whether the evidence warranted this finding of the jury is therefore the question for decision. If answered in the affirmative plaintiff has not only overcome the barrier of the engineer's estimate, but he has established his case by showing, as he was obliged to do in order to recover, the amount of work done by him under his contract.

2. It seems to us that the evidence, passing for the present all questions as to its admissibility, was sufficient in probative force to justify the verdict of the jury. We have called attention to the evidence as to the omission to survey the pit outside of the right of way, and to the conflict in the evidence as to its original contour, whether flat or hilly. The jury was justified in deciding for plaintiff on this point. Plaintiff attempted to prove the quantities of earth moved, by evidence that he and two employees made an actual count of the number of cars of earth hauled. They testified to the result of this count; there was testimony as to the quantity of earth contained in the cars, and as to the difference in bulk between loose dirt and dirt in the pit. Appellants attack this testimony, arguing that it is improbable, unworthy of belief and insufficient as proof of the actual quantities taken from the pit. We think it was for the jury to weigh this evidence, and that it is not for us to say that it did not deserve credence or has not probative value sufficient to justify the verdict rendered. It was not contradicted by any evidence offered by defendants, except the report of the engineer. Unless there was error in receiving evidence on this issue, the verdict must be sustained.

3. Defendants-appellants insist that incompetent evidence was received, the main item of which is a bunch of slips purporting to be memoranda kept by plaintiff's foreman and bookkeeper of the number of cars hauled. This foreman and plaintiff himself, working on different shifts, counted most of the cars, though some, in their absence, were counted by another employee. The foreman, at the end of his

shift, noted on a slip of paper the number of cars he had counted during the shift. Plaintiff, at the end of his shift, gave to the foreman the result of his count, who noted it on a slip. The other employee did the same thing whenever he made a count, except that he kept his own memorandum of his count, and gave the information from that. Plaintiff, the foreman, and the other employee all testified to the accuracy of their counts; plaintiff and the other employee testified to the accuracy of their reports to the foreman, and the latter to the correctness of his noting down their reports and his own count. The memoranda were made in the usual course of the work, before any controversy had arisen, and under modern rules, which are less technical and more sensible than those which formerly obtained, we think there was no error in receiving them whether they be considered as memoranda to refresh the recollections of the witnesses, or as independent evidence. 1 Dunnell, Minn. Dig. § 3346, and cases cited. 3 Dunnell, Minn. Dig. § 10330 and cases cited. Dunnell, Minn. Dig. 1916 Supp. §§ 3346 and 10330, and cases cited.

4. Error is claimed in permitting plaintiff and two other witnesses to testify as to the contents of the cars used by plaintiff, and to the relative bulk of freshly dug earth and earth in the pit. We cannot say that the trial court was wrong in holding that a proper foundation had been laid for this testimony and that the witnesses were qualified to speak. It was not a valid ground of objection that no gross mistake in the engineer's estimate had been shown, as part of the purpose of the testimony was to show this. Nor is it important that the witness Hawley based his calculation upon the quantities appearing on the slips before described.

5. A more difficult question concerns the manner of proving the overhaul, the distribution of earth moved by plaintiff over and above what he was allowed for by the engineer. Witness Hawley was plaintiff's main support on this issue. It was naturally impossible to follow each yard of this extra earth and tell what distance it was moved. Hawley, whose qualifications as an expert are not questioned, devised a formula for determining the amount of overhaul. He took the quantity of earth shown by the engineer's estimate as coming from the pit in question, and the amount as shown by the evidence for plain-

tiff, found that the ratio was 125.2 per cent and used the same ratio in figuring the overhaul, that is, multiplied the overhaul as allowed by the engineer for the earth spread between two certain sections of the work by the factor. Counsel for defendants vigorously assail this method of determining the overhaul on the extra yardage claimed by plaintiff, but it is worthy of note that the engineers, who were in court as witnesses for defendants, admitted that it was possible to estimate the overhaul, and did not offer any other method of doing so. We are unable to see that the method was not likely to produce a fairly accurate result or why the testimony of the witness was wholly "incompetent, irrelevant and immaterial." We have tried hard to understand the argument that Hawley's factor was necessarily erroneous because in figuring the amount of earth admitted by plaintiff to have been taken from the pit he included that taken from the portion of the pit that was within the right of way, which was admittedly measured and cross-sectioned by the engineers before the excavating was done. If we have succeeded in understanding this claim, and we think we have, the fact stated did not render Hawley's factor so plainly erroneous that it was not for the jury to judge whether it was correct. It seems to us that the witness was entitled, in making his computation of the quantities of earth moved from the pit by plaintiff, to take plaintiff's figures as to the entire pit, and that he was not obliged to assume that the engineer's estimate was correct as to the earth taken from the right of way.

The witness Hawley stated that the total overhaul, figured in the manner stated, was 1,569,063.9 yards. It is claimed that this is manifestly erroneous, even using Hawley's factor and his estimate of the quantities moved. This may be true. But if so it was a simple error in multiplication, as clearly discoverable on the trial as afterwards. Counsel did not call attention to this error on the trial. We do not feel that they are fairly entitled to a reversal here on this account.

6. It is urged that the court erred in giving the following instruction: "If you find that Mr. Dawson's contention is right as to this mistake, or amount of earth moved, he would be entitled to recover in addition to the freehaul, one cent per cubic yard for 1,569,063.9 cubic yards of overhaul." It is insisted that this was an instruction

that the figures of plaintiff and his expert as to the overhaul were to be taken by the jury as correct. From the charge as a whole we think it fairly appears that the court was here merely stating the claim of plaintiff as to the overhaul. If counsel thought it was likely to be taken as a direction to the jury, it was their duty to call attention to the instruction at the trial. This was not done, nor was there any exception to it either at the time or on the motion for a new trial. The error, or rather inaccuracy, is not ground for reversal.

7. Defendant Maryland Casualty Company makes the point that the trial court erred in holding that State Road No. 2 was not a highway constructed under the provisions of the so-called Elwell law, and that under G. S. 1913, § 8244, it was necessary for plaintiff to obtain leave of court before he could bring an action on the bond. Plaintiff did not obtain such leave, but defendant casualty company did not raise the point by either demurrer or answer. We hold it was waived. Plaintiff complied with the provisions of G. S. 1913, § 8249, in that he gave both the obligee and the obligor on the bond due notice of his claim.

We see no other points that require mention. In our opinion the evidence justifies the verdict both on the question of mistake and as to the amount of work done by plaintiff under his contract. There were no prejudical errors in the admission of evidence or in the charge, and the verdict must stand.

## II

### As to the Claimants.

The intervening claimants against the fund and the bond whose claims are involved on this appeal are Jack Riegelsperger, Joseph Gibson Company, First National Bank of Deer River, Nick Nockles, Charles Brown, Henry Mead, all of whose claims were allowed by the trial court, and Engstrom & Hosford and Ord Company, whose claims were allowed in part and disallowed in part.

1. A point common to all of the claims except those of Engstrom & Hosford and Ord Company concerns the necessity of the claimants giving the surety notice of their claims as provided by G. S. 1913, § 8249. The contention that it was necessary to give such notice is easily disposed of. As stated, plaintiff Dawson, who instituted the

action, gave the notice required by this section. We assume, without so deciding, that he was obliged to do so before he could bring the suit. But the claimants were brought in by order of the court. They did not bring the action and were not plaintiffs. There is nothing in the section referred to or in the statutes anywhere that requires each interpleaded claimant to show, before he can have the benefit of the bond, that he gave the notice required by the section, and we hold that it was unnecessary. Furthermore their pleadings setting forth their claims did not allege that notice had been given, and defendant did not make the point either by demurrer or answer. We think it is immaterial that the answers of certain of the claimants were not filed within a year after plaintiff gave his notice.

2. This brings us to a consideration of the merits of the respective claims, as to whether they are such as are entitled to the benefit of the bond. Under G. S. 1913, § 8245, the bond is required to be given:

"For the use of the obligee and of all persons doing work or furnishing skill, tools, machinery, or materials under or for the purpose of such contract, conditioned for the payment, as they become due, of all just claims for such work, tools, machinery, skill and materials, for the completion of the contract in accordance with its terms, for saving the obligee harmless from all costs and charges that may accrue on account of the doing of the work specified."

The bond by its terms was "for the use of said county, and also for the use of all persons who may perform any work or labor, or furnish any skill or material in the execution of the contract," etc. The word "tools" is not employed in this "use" clause, but does appear in the condition of the bond, which is that the obligor shall pay, as they become due, "all just claims for all work and labor performed and all skill, *tools* and material furnished under or for the purpose of, or in the execution of, said contract," etc. In view of the quoted language of the statute, and the language of the condition clause, it must be held that one furnishing "tools" for the work is entitled to the benefit of the bond. Sepp v. McCann, 47 Minn. 364, 50 N. W. 246.

The claims of Riegelsperger, Joseph Gibson Company, First National Bank of Deer River, Engstrom & Hosford and Ord Company involve the question of whether one renting or furnishing to the original con-

tractors horses for use in performing the contract may have the benefit of the bond. This question is by no means free from difficulty. McKinnon v. Red River L. Co. 119 Minn. 479, 138 N. W. 781, 42 L.R.A.(N.S.) 872, involved the question whether the labor of teams, hired without drivers, was "manual labor or other personal service," so as to come within the log lien law. The decision that there was no lien is not controlling in this case, as the statute and bond used language that is much broader: All work and labor performed and *all* skill, *tools,* machinery or material furnished. In Miller v. American Bonding Co. 133 Minn. 336, 158 N. W. 432, we held that there was a liability on the contractor's bond for the repair of tools and machinery necessarily used on the work, and for the reasonable value of the use of such tools and machinery. It may seem doubtful if horses can reasonably be called "tools" or "machinery," but on the other hand it is impossible to see why the surety should be liable for the repair and use of dinky engines or dump cars, used in road construction, and not be liable for the use of teams which do the same work. The horses certainly perform work for the completion of the contract just as the engines and cars do. We have examined the authorities cited by appellant, and are of the opinion that they do not compel us to hold that there is no liability for the use or rental of teams without drivers. All of the cases cited are decided under statutes that are materially different from ours, and are not in accord with our decision in the Miller case. Reference may be made to the notes in 16 L.R.A.(N.S.) 585, 43 L.R.A.(N.S.) 162, and L.R.A. 1915F, 951, where many cases are cited and discussed, also to Eastern Texas R. Co. v. Foley, 30 Tex. Civ. App. 129, 69 S. W. 1030; St. Louis, I. M. & S. Ry. Co. v. Love, 74 Ark. 528, 86 S. W. 395; Texas & St. L. R. Co. v. Allen & Humphreys, 1 White & Willson, Civil Cases (Tex. App.) 291.

Our conclusion, based upon the language of the statute and of the bond, is that the surety is liable for the rental value of horses necessarily used on the work, though the claims did not include the services of teamsters. This would necessarily cover the rental value and cost of repair of harnesses.

What has been said disposes of all the claims of the interpleaded defendants, except those portions of the claims of Engstrom & Hos-

ford and Ord Company that were disallowed by the trial court in an amendment to its conclusions of law. The items disallowed were these: (1) The sum of $1,226.87, stipulated as necessary to compensate claimants' assignor for horses killed and injured on the work and for the depreciation in value of harness; (2) the sum of $138.66 for return freight on equipment rented by the contractor from claimants' assignor. We think the trial court was right as to both items. We are unable to hold that the surety on the contractor's bond is liable for either item.

There is a claim that the court erred in finding that plaintiff and the various claimants should share *pro rata* in the fund deposited in court by the county, and recover the balance of their respective claims from the casualty company. We do not consider this claim of sufficient merit to require anything further than the expression of our opinion that this could not well prejudice the casualty company and was quite clearly right.

The orders appealed from are affirmed.