KERBY *v*. ROAD IMPROVEMENT DISTRICT No. 4, SALINE
COUNTY.

Opinion delivered May 21, 1923.

1. HIGHWAYS—LIABILITY OF ROAD CONTRACTOR.—A road contractor is liable to a subcontractor for work which his contract required him to do, though the road improvement district made no allowance to him for doing such work.

2. PRINCIPAL AND AGENT—UNAUTHORIZED ACT—RATIFICATION.—Where an agent, with the principal's knowledge, made an unauthorized contract of which the principal received the benefit, he will be held to have ratified the contract.

3. HIGHWAYS—CONTRACTOR'S BOND—ALTERATION AS RELEASE OF SURETY.—Where a contractor's bond was based upon a contract between the contractor and the road improvement district which authorized alterations or changes to be made, the sureties were not discharged from liability by changes made in accordance with the terms of the contract.

4.  HIGHWAYS—CONTRACTOR'S BOND—WHO MAY SUE.—Crawford & Moses' Dig., § 5446, requiring road contractors to give bond for performance of their contracts, and providing that "any person, individual or corporation supplying labor and material shall have a right of action, intended to extend the benefit of the act to those who supply the labor of others as well as those who labor themselves.

Appeal from Pulaski Circuit Court, Third Division; *A. F. House,* Judge; affirmed.

*Longstreth & Bohlinger,* for appellants.

The court erred in giving instructions numbered 1 and 2 and in refusing appellant' requested instruction No. 2, submitting his theory of the liability to the jury. Had the right to specific instructions applying the law to the facts of the case. 98 Ark. 17; 122 Ark. 259; 69 Ark. 172; 87 Ark. 243; 87 Ark. 531; 90 Ark. 249; 122 Ark. 125. Court should properly instruct the jury as to any particular theory of the case if there is evidence to support it. 76 Ark. 227; 50 Ark. 545; 52 Ark. 45; 77 Ark. 128. The court refused all three instructions asked by appellant, and instructions given did not submit their theory of the case, and were highly prejudicial to the sureties on the bond. The court erred in refusing appellants' requested instruction numbered 1, relating to release of sureties on the bond by material changes of the contract without their consent. 30 Ark. 667; 77 Ark. 125; 112 Ark. 429; 112 Ark. 207; 123 Ark. 486; 74 Ark. 600; 69 Ark. 126; 65 Ark. 550; 96 Ark. 268; 122 Ark. 522; 65 Ark. 250.

*Mehaffy, Donham & Mehaffy,* for appellee.

The case should be affirmed for failure to make a proper abstract as required by Rule 9; 136 Ark. 188; 101 Ark. 30; 80 Ark. 259; 81 Ark. 237; 110 Ark. 7; 57 Ark. 441; 88 Ark. 447; 104 Ark. 64; 57 Ark. 304; 58 Ark. 448. Appellant Kerby was liable for the fourth estimate, also liable to appellee for payment to Reed for grubbing two acres of ground. Sureties on Kerby's bond not released by changes in the contract. 21 R. C. L. 1016; 234 U. S. 448; 249 Fed. 322; 92 Fed. 549; 192 Fed. 364;

240 Fed. 400; 25 N. E. (Ind.) 443; 21 R. C. L. 1016, §
5446. The judgment should be affirmed.

*Longstreth & Bohlinger,* in reply.

Cases cited by appellee on question of release of
sureties by change of contract not applicable here, Reed
being a subcontractor. 4 Elliott on Contracts, 735,
No. 3544.

McCULLOCH, C. J. The road improvement district
involved in this controversy was organized in Saline
County by order of the county court, pursuant to general
statutes (Crawford & Moses' Digest, § 5399 *et seq.*),
for the purpose of constructing a highway beginning at
the end of Arch Street, at the Pulaski County line, and
running thence 6.4 miles south, through Saline County,
to the Grant County line.

Appellant Kerby entered into a contract with the
district to build the road in accordance with the plans
and specifications prepared by the engineer, and he gave
bond to the district in the sum of $15,000, in accordance
with the statute (Crawford & Moses' Digest, § 5446),
for the faithful performance of his contract, and con-
taining an obligation to pay for all labor and materials
supplied by any and all persons.

The contract between appellant Kerby and the dis-
trict was in writing, and he entered into an oral
subcontract with T. H. Read for the latter to do the
grading work on a mile of the road. After the comple-
tion of the work, Read claimed a balance due him on his
contract in the sum of $617.50, and this action was in-
stituted in the name of the district, for the benefit of
Read, against appellant Kerby and the sureties on his
bond, O. B. Field and W. A. Baxley.

Appellant Kerby admitted liability to Read in the
sum of $312.75, but denied liability for the remainder of
the amount claimed. The sureties pleaded that they were
discharged from liability on the bond by reason of ma-
terial changes in the contract between Kerby and the
district. Kerby also claimed, in his defense, that under

the contract with Read there was to be a retained percentage of the contract price until completion of the road, and that the road had not been completed.

There was a trial of the issues before a jury, and the verdict was in favor of appellee for the full amount of Read's claim.

There is really no dispute in the evidence as to the correctness of the items in Read's claim, but the dispute arises over the question of the liability of appellant for payment of the same.

The amounts in dispute are divided into two items, the first being the sum of $204.75 for what is termed the "fourth estimate" of Read's work, and the remaining item of $100 is for clearing and pulling stumps from two acres of ground.

Kerby claims that he is not liable for the item of $204.75, for the reason that it was not in his contract with the district, and that the work was done by Read under what is termed "force account," by direction of the engineer of the district.

Appellant requested the court to instruct the jury that if "the engineer for the district had authority to order work done for the district other than contemplated in the contract between the district and defendant Kerby, and that he directed the plaintiff to do other work than that embraced in Kerby's contract, and that no payment was made or allowed to Kerby by the district, you are instructed that the defendant Kerby would not be liable to the plaintiff for the amount of such work." We do not think that the evidence warranted this instruction, for, according to the evidence, the work covered by this estimate was within the contract between Kerby and the district, and also was in the contract between Kerby and Read. The work was back-filling at bridges and culverts. The evidence showed that, under the contract, the engineer had the right to direct Kerby to do any work necessary for the construction of the road, whether specified or not, and the engineer, who was introduced as

a witness by appellants, testified that it was inconvenient for Kerby to go back to that work to do it, and that for that reason he directed the work to be done by Read. The proof shows that this was in Read's contract. Since this is true, Kerby cannot escape liability because an allowance was not made to him for the work. All that the proof shows is that the work was under what is called "force account," and that the estimate was made directly to the district by Read. Of course, Kerby is entitled to credit for this in his settlement with the district, but the fact that it has not been credited to Kerby by the district does not release Kerby from his obligation to pay the subcontractor.

As to the other item of $100 for clearing and grubbing, the proof shows that this work was embraced in Kerby's contract with the district, and that he was to receive $125 an acre. It is not embraced in the original contract between Kerby and Read, but Kerby's foreman made a contract with Read to do this work on two acres of ground at $50 per acre. Kerby testifies that the foreman had no authority to make this contract, but he does not claim that it was done by Read without his knowledge, and he is deemed to have ratified the unauthorized acts of his foreman.

Error of the court is assigned in submitting to the jury the issue concerning the retention of the percentage. The court told the jury, in substance, that, if there was an agreement between Kerby and Read that fifteen per centum was to be retained until the entire road was completed by Kerby, there should be no verdict for the amount of the retained percentage, but, on the other hand, if there was no agreement for the retention of the percentage, the amount should not be deducted from Read's recovery. There was conflicting testimony on this subject, and it was proper to submit the issue to the jury. Kerby testified that there was an express agreement between him and Read that fifteen per cent. should

be retained, but Read testified that there was no such agreement. This made an issue for the jury to settle.

It is contended on behalf of the sureties that they were discharged by reason of material changes in the contract, and error is assigned in the refusal of the court to submit that issue to the jury. Appellants invoke the familiar rule that sureties are bound only by the letter of their contract, and that any alteration of the contract between the principals discharges the sureties.

The obligation of the bond executed by the sureties was based upon the contract between Kerby and the district, and there is a clause in the contract which authorizes changes, both material and immaterial. Paragraph 27 of the contract provides that the engineer, with the consent of the board, can "alter or change any detail in the material or method of construction, or the location of roadway or grade, which would not materially increase or decrease the cost of the work, without additional compensation to the contractor." In the same section it is further provided that "important changes or alterations may be made, but the contractor shall not proceed with such changes or alterations without written orders from the engineer. The price covering such changes or alterations shall be fixed by agreement between the engineer and the contractor." Now, this is a clear agreement for immaterial changes to be made by the engineer, or material changes to be made by agreement between the engineer and the contractor. The engineer had no right to make material changes without the consent of the contractor, but any changes made in accordance with the contract, however material, did not discharge the sureties from liability.

It is also contended that the clause of the contract requiring said contract to be in writing and approved by the engineer affected the liability of the sureties, and that the acceptance of a subcontract orally, without written approval by the engineer, discharged the sureties. We cannot agree to this contention. Section 20 of the

contract provides that the contractor "will not be permitted to sublet, assign, sell, transfer, or otherwise dispose of the contract or any portion thereof, or his right, title or interest therein, to any indiviual, firm or corporation, without the written consent of the board and engineer." This general provision was put into the contract evidently for the benefit of the district, and the latter was estopped from disputing the rights of the subcontractor, if it accepted the services without requiring a written contract and the written approval of the engineer. This did not constitute a material change in the contract which affected the liability of the sureties.

Finally, it is contended that the sureties are not liable to the contractor, but are only liable to those who actually performed labor or furnished material. The statute under which the bond was given reads as follows:

"All contractors shall be required to give bond for the faithful performance of such contracts as may be awarded to them, with good and sufficient security in an amount to be fixed by the board of commissioners, and said bond shall contain an additional obligation that such contractor, or contractors, shall promptly make payment to all persons, supplying him or them labor and materials in the prosecution of work provided for in such contract. Suit may be brought by and in the name of the district upon the bond given to the board. Any person, individual or corporation supplying labor and material shall have the right of action, and shall be authorized to bring suit in the name of the district for his, their, or its use and benefit, against said contractor and surety, and to prosecute same to final judgment and execution, but such action and its prosecution shall involve the district in no expense whatsoever." Crawford & Moses' Digest, § 5446.

The language of the bond is in conformity with the statute.

In construing the statutes of this State giving liens to mechanics and furnishers of material, we have decided

that contractors are not entitled to a lien for furnishing labor, and that the lien was only given to the mechanic or laborer who performed the services. *Little Rock, Hot Springs & Texas Ry. Co.* v. *Spencer,* 65 Ark. 183; *Royal Theater Co.* v. *Collins,* 102 Ark. 539; *Cook* v. *Moore,* 152 Ark. 590. The statute prescribing the terms of the bond now under consideration is, however, quite different, for it expressly provides that the "contractor, or contractors, shall promptly make payment to all persons supplying him, or them, labor and materials in the prosecution of work provided for in such contract." Now, the term "supply * * * labor and materials" means something more than mere performance of labor. In other words, it includes the supplying of the labor of others. This view is fortified by the fact that the words "labor and materials" are coupled together, and the word "supply" has reference to both, meaning to confer benefit upon persons who supply labor as well as those who supply materials. Another feature of the statute which fortifies this view is that it provides that "any person, individual or corporation supplying labor and material shall have the right of action." It is obvious that a corporation can not itself labor, and therefore it was not the purpose of the Legislature to confine the benefits flowing from this statute to persons who labor themselves, but, on the contrary, it was intended to extend the benefit to those who supply the labor of others as well as those who labor themselves.

This covers all the assignments of error in the case, and we have reached the conclusion that none of the assignments are well taken. The judgment is therefore affirmed.