S. L. FULGHUM AND UNION INDEMNITY COMPANY, A CORPO-
RATION, *Plaintiffs in Error*, v. STATE OF FLORIDA, FOR THE
USE OF CHAS. W. MERRITT, *Defendant in Error*.

### En Banc.

### Opinion Filed August 21, 1926.

1. The test by which the sufficiency of a contractor's bond, executed pursuant to Section 3533, Revised General Statutes, 1920, is to be judged is whether the "obligation" required by the statute has been created or imposed, and not the formula of words employed to express that obligation.

2. Before entering upon public work, a contractor executed a bond with the usual obligation to perform the contract, and with the additional obligation that the principal "shall promptly pay all just claims * * * for labor and materials incurred by said principal in or about the construction or improvement contracted for." *Held*, sufficient, under Chapter 3533, Revised General Statutes, 1920, to afford protection to persons supplying labor and materials in the prosecution of the work. ᵃ ·

3. A sub-contractor on public work, who, by himself and through other persons in his employ, or by the use of teams and mechanical equipment, has furnished labor in the prosecution of the work for a stated consideration agreed upon with the principal contractor, may recover that consideration in his status or capacity as such sub-contractor from the surety upon a bond executed pursuant to and containing the additional obligation required by Section 3533, Revised General Statutes, 1920.

4. The protection of Section 3533, Revised General Statutes, 1920, is not limited to those who "perform" labor on public work, but extends to those who "supply" labor. One may supply labor by providing others to do the work.

5. The protection of Section 3533, Revised General Statutes, 1920, is not limited to "laborers," that is those who perform physical labor. Labor performed with the aid of horses, tractors and derricks, and other mechanical equipment or devices is within the meaning of the statute, so long as such labor is supplied in the prosecution of the work.

6. The broad general purpose of Chapter 3533, Revised General Statutes, 1920, is to afford a means of protection to those supplying labor and materials to the contractor in public work in lieu of the lien afforded by other statutes on private work.

A Writ of Error to the Circuit Court for Escambia County; A. G. Campbell, Judge.

Judgment affirmed.

*William Fisher*, for Plaintiffs in Error;

*Watson & Pasco*, for Defendant in Error.

STRUM, J.—This cause is here on writ of error to review a judgment at law obtained by the defendant in error, who was plaintiff below, against plaintiff in error as surety upon the bond of a contractor engaged in the performance of public work. The bond purports to have been executed pursuant to the provisions of Section 3533, Revised General Statutes, 1920. The amendment of 1925 (Chap. 10035, Acts of 1925) is not material to the controversy.

S. L. Fulghum, having entered into a contract with the State of Florida for the construction of a public road in Escambia County, also executed a bond, dated December 19, 1922, to the State of Florida, as obligee. The said contractor, S. L. Fulghum, executed the bond as principal, and his co-defendant below, Union Indemnity Company, as surety. The bond contained the condition, amongst others,

that if the principal "shall promptly pay all just claims * * * for labor and materials incurred by said principal in or about the construction or improvement contracted for, then this obligation to be void, otherwise to be and remain in full force and virtue in law."

The contractor, Fulghum, entered upon the work, and sub-let to the plaintiff, Merritt, as a sub-contractor, certain portions thereof, namely, certain grading, sub-grading and excavating, at a stated price per cubic yard; certain clearing and grubbing, at a stated price per acre; and certain hauling to be done by teams, at stated prices. The principal contractor later abandoned the work, and defaulted in the payment of certain indebtedness due Merritt under the sub-contract, to recover which this suit is brought against the principal contractor and his surety.

Upon authority of J. B. McCrary Company v. Dade County, 80 Fla. 652, 86 South Rep. 612, it is contended that the obligation of the bond sued on does not follow the provisions of the statute, and hence that no recovery can be had upon the bond as a statutory bond under the provisions of Section 3533, *supra*. The statute requires that the principal contractor, before commencing upon public work, shall be required to execute the usual penal bond, "With additional obligations that such contractor, or contractors, shall promptly make payments to all persons supplying him, or them, labor and material in the prosecution of the work provided for in such contract." In J. B. McCrary Co. v. Dade County, *supra*, the condition of the bond sued on was that the principal should well and truly perform, carry out and abide by all of the terms and conditions of the contract and specifications in connection with which the bond was executed. The "additional obligations" required by the statute were "*totally omitted.*" The plaintiff in that case, a dealer who had furnished materials to a sub-

contractor on the work, contended that since the contract contained a clause that the principal contractor would promptly pay all just claims for material, supplies, equipment and damages, and would save the obligee harmless against all claims for material, labor, damages and supplies due any person by reason of the contract having been let to the principal contractor, and as the contract was made a part of the bond by the terms of the latter, that the statute was in substance complied with, and that the plaintiff in that case could recover against the surety. In that case this court pointed out that the usual penal bond, that is a bond for the faithful execution of the contract according to its terms, is all the protection needed by the public authority under which the work is done, but that the additional obligation is required to be included in such bond in order that the protection of the material man and laborer may be secured. The court further said: ''The condition of the bond secured the performance of the contract; this condition was for the benefit of the county. There was no privity between third persons and the county, nor between them and defendants. The rights of the material men and laborers depended entirely upon the statute and its provisions were ignored in drafting the bond.''

But in the case now before us we have a materially different situation. The bond here sued on, besides the usual obligation to comply with and carry out the contract, contains the additional obligation that the principal contractor ''shall promptly pay all just claims * * * for labor and materials incurred by said principal in or about the construction or improvement contracted for.'' The latter language, it is true, is not identical with that of the statute. The statute, however, prescribes the additional ''obligation'' to be included in the bond, not the precise language or formula of words which shall be used to create that

obligation. An "obligation" is that which one is legally bound to do. The obligation does not inhere and subsist in the contract itself, *proprio vigore*, but in the law as applied to the terms of the contract. Ogden v. Saunders, 12 Wheat. (U. S.) 213, 216, 6 Law Ed. 606. The "obligation" itself is therefore a totally different thing from the language by which the obligation is expressed. The bond here sued on was admittedly executed pursuant to Section 3533, Revised General Statutes, 1920. The test by which a compliance with the statute is to be judged is whether the "obligation" required by the statute has been created or imposed, and not the formula of words employed to express that obligation. The language used in the bond here sued on, in its legal effect, imposes upon the principal contractor the "obligation" required by the statute for the benefit of those furnishing him with material and labor in the prosecution of the work, and that being so, the bond is sufficient as a statutory bond. City of Philadelphia v. Nichols, 214 Pa. 265, 63 Atl. Rep. 886; Title Guaranty & Surety Co. v. State, 61 Ind. App. 268, 109 N. E. Rep. 237. Affirmed on re-hearing in 111 N. E. Rep. 19; Klein v. Beers, 95 Okla. 80, 218 Pac. Rep. 1087; United States v. Hodson, 10 Wall. (U. S.) 395, 19 Law Ed. 937; Stephenson v. Monmouth Mining & Mfg. Co., 84 Fed. Rep. 114; State v. Wotring, 56 W. Va. 394, 49 S. E. Rep. 365; 9 C. J. 24. See also Cheney v. Trammell, 65 Fla. 451, 62 South. Rep. 916.

Although, as was said in J. B. McCrary Company v. Dade County, *supra*, a surety's obligation will be strictly construed, and will not be extended by implication to conditions not clearly within the conditions of the undertaking, that rule does not prevent a construction of the bond with a view to determining its fair scope and meaning in the light of the language used. See United States, to use

of Hill v. American Surety Co. of New York, 200 U. S. 197, 50 Law Ed. 437, 26 Sup. Ct. Rep. 168.

The sole remaining question for determination is whether or not a sub-contractor on public work who, by himself and through other persons in his employ, or by the use of teams and mechanical equipment, has furnished labor in the prosecution of the work for a stated consideration agreed upon with the principal contractor, may recover that consideration in his status or capacity as such sub-contractor from the surety upon a bond executed pursuant to and containing the additional obligation required by Section 3533, Revised General Statutes, 1920. Plaintiff in error, the surety, contends that the sub-contractor can not recover his gross compensation based upon the unit prices agreed upon with the principal contractor, because those prices apparently included, in addition to the wages paid the laborers employed by the sub-contractor, the hire of his teams, scrapers, tools, the sub-contractor's profit on the job, his over-head expense for bookkeeping, accounting, etc., and depreciation on his stock and equipment, and that such a recovery is not contemplated by the statute or the bond.

The items for which recovery was had by the sub-contractor are thus stated in his bill of particulars:

"October 25th, to balance due on clearing, grubbing and grading ........................$  926.35

"October 25th, to clearing and grubbing 10.30 acres, at $35.00 .........................   360.50

"October 25th, to 1489 cu. yds. excavating at 32c ...................................   475.84

"October 25th, to hauling gravel and sand and teams for subgrading ....................   813.80

"November, 8th, to hauling gravel and repairing washouts ..............................    29.56

"November 25th, to 3706 cu. yds. excavating at

 32c  ...  ............................ 1,185.92

  Total  ...................... .........$3,791.97"

The items shown by plaintiff's bill of particulars, and for which he recovered as sub-contractor, are clearly within the protection of the statute and the bond. The protection of the statute is not limited to those who "perform" labor, but it expressly extends to those who "supply" labor. To supply is to provide or furnish. One may supply labor by performing it himself. But he may also supply labor by providing others to do the work. In either case the labor is "supplied." Kerby v. Road Improvement Dist., 159 Ark, 21, 251 S. W. Rep. 356; Aetna Casualty & Surety Co. v. Henslee, 163 Ark. 492, 260 S. W. Rep. 414. Neither is the protection of the statute restricted to "laborers," that is, those who perform physical labor. The statute does not circumscribe or limit the manner in which the labor is to be supplied, so long as it is supplied in the prosecution of the work. We find in the statute no qualifying words, such as "common labor" or "manual labor" or "personal labor" or "physical labor." Nor do we find in the very comprehensive language of the statute anything which directly or by fair implication excludes sub-contractors from the protection afforded. Labor performed with the aid of horses, tractors and derricks, and the transportation of materials by barges has all been held to be "labor" within the meaning of such a statute, and within the protection of the bond. See Multnomah County v. United States Fidelity & Guaranty Co., 92 Ore. 146, 180 Pac. Rep. 104; National Surety Co. v. Bratnober Lumber Co., 67 Wash. 601, 122 Pac. Rep. 337; Dawson v. Northwestern Const. Co. 137 Minn. 352, 163 N. W. Rep. 772; United States v. Port Deposit Quarry Co., 272 Fed.

Rep. 698. See also, with reference to a lien statute, Hogan v. O'Neal, 49 Wis. 169, 5 N. W. Rep. 490; Chicago & N. E. R. v. Sturgis, 44 Mich. 538, 7 N. W. Rep. 213. And the rental of railway cars, track and equipment to be used in performing the work has been held to be "material supplied" and within the protection of the bond. Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 61 Law Ed. 1206, 37 Sup. Ct. Rep. 614. In the latter case 'the court said: "Decisions of this court have made it clear that the statute and bonds given under it must be construed liberally, in order to effectuate the intention of Congress as declared in the Act. In every case which has come before this court, where labor and materials were actually furnished for and used in part performance of the work contemplated in the bond, recovery was allowed, if the suit was brought within the period prescribed by the Act. * * * The Surety Company contends that this (the rental of cars, track and equipment) is not supplying 'labor and materials.' The equipment was used in the prosecution of the work. Material was thus supplied, although a loan serving the purpose, no purchase of it was made. The expense of loading and freight were properly included with the fixed rental as recoverable, under the bond. Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, 34." And the rental of scows for transporting material has been held a proper item for recovery under a bond such as the one under consideration. Taylor v. Connett, 277 Fed. Rep. 945. If persons who furnish those items just mentioned to the contractor or sub-contractor may recover therefor in their own right on the bond, and it is settled that they may, then those items are none the lesss proper subjects for recovery as an integral part of the compensation agreed upon between a principal contractor and sub-contractor for doing the work.

The following observation of the court in United States v. Port Deposit Quarry Co., 272 Fed. Rep. 698, is pertinent here in connection with the use by this plaintiff of teams and other equipment in accomplishing his work:

"Whether you shall call the transportation and the hoisting a part of the materials in place, or part of the labor in putting them in place, seems to me to afford opportunity for interesting exercise in intellectual gymnastics, but in this case it would scarcely seem that it would make any difference how it was answered. If a sub-contractor had undertaken to deliver the material in place for a total price, his undertaking would have been covered by the bond. The work might have been done by putting the stones by hand on rafts or galleys propelled by oars. Hand power might have been used to lower the stones into place. That is doubtless what an ancient Egyptian contractor would have done. The pay of the rowers and the laborers in putting the stones where the government wanted them would have been labor supplied under the contract Whether, on the whole, you prefer to call it the one or the other, would not affect the result."

It would indeed be a strained construction of the statute to hold that one who performs or otherwise supplies manual or physical labor alone is protected, while one who is aided in his labor by a team of horses and a wagon, or by mechanical devices or equipment, may not recover the agreed value of his work, but only that part represented by the physical labor alone. Carried to its ultimate conclusion such a construction would in many cases exclude artisans who employ tools or machines in their labor. Clearing a right of way, excavating and grading, and hauling materials to and debris away from a road building project clearly involves the performance of labor. It would be *reductio ab absurdum* to say

that the parties to this sub-contract contemplated that the sub-contractor would himself, and with his own hands, clear the right of way and do the necessary excavating and grading for a road ten miles long. It is a matter of common knowledge, and was within the contemplation of both the statute and the bond here sued on, that the character of labor provided for in the principal contract is performed with the aid of others and with teams and mechanical appliances and devices. If a sub-contractor agrees with a principal contractor to perform a portion of that labor, and does so, he has indubitably supplied labor in the prosecution of the work. The fact that it was accomplished with the aid of others, and with teams and mechanical equipment, does not alter its essential character as labor. How the sub-contractor conducts his organization, whether he must pay out sums for ''over-head expenses'' and how he came into possession of the equipment he used, whether he owned it or hired it, is all beside the point. The fact that these costs to the sub-contractor may, and probably do, form component elements of his agreed price with the principal contractor for doing the work does not defeat his right to recover on the bond for the labor at the agreed price, where there is no charge of fraud or collusion.

The broad general purpose of the statute is to afford a means of protection to those supplying labor and material in public work in lieu of the lien afforded by other statutes on private work. Under a former lien statute in this State (Sec. 2 Chap. 3747, Laws of 1887), providing a lien in favor of those ''performing any labor upon or for the benefit of any railroad,'' it was held that it was not the intention of the legislature to confine the benefits of such statute to wage workers to the exclusion of contractors, but that under the statute mentioned, a contractor was entitled to a lien. Couper v. Gaboury, 69 Fed. Rep. 7. See

also Owen v. Chicago, B. & L. R. Co., 86 Neb. 851, 126 N. W. Rep. 658. We do not overlook the fact that some courts, in construing statutes of this general nature, have denied the right of a sub-contractor to recover. A number of those cases will be found in the Note to Jenkins V. Chesapeake & O. R. Co., (61 West. Va. 597, 57 S. E. Rep. 48), 49 L. R. A. (N. S.) 1166. But a careful inspection of the statutes construed in those cases will disclose that they materially differ from our statute.

In its essential provisions, Section 3533, Revised General Statutes, 1920, is the same as the Act of Congress of August 13, 1894, 28 U. S. Stat. at Large, 278; U. S. Comp. Stat. (1901) page 2523, Chap. 280, as the same existed prior to the amendment of 1905, and our statute was designed to serve the same relative purpose as the Federal Statute. The Federal Courts, both prior and subsequent to the original enactment of Chapter 3533, Revised General Statutes, 1920, which was Chapter 6867, Laws of 1915, in construing the Federal Statute have repeatedly decided or recognized the right of sub-contractors to recover at the agreed price.

In Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 61 Law Ed. 1206, 37 Sup. Ct. Rep. 614, it was said: "If Schott (the original contractor) had formally sub-let the contract to the Engineering Company (which rented certain cars, track and equipment to the contractor) the Surety Company would clearly be liable" (for the cost of rental). See also United States V. D. L. Taylor Company, 268 Fed. Rep. 635; Chicago Bonding & Surety Co. v. United States, 261 U. S. 266; Robinson v. United States, 251 Fed. Rep. 461; Arnold v. United States, 280 Fed. Rep. 338; Illinois Surety Co. v. United States to use of Peeler, 240 U. S. 214, 60 Law Ed. 609, 36, Sup. Ct. Rep. 321; Mankin v. United States to use of Ludowici-Celabon Co.,

215 U. S. 533, 54 Law Ed. 315, 30 Sup. Ct. Rep. 174; Title Guaranty & Trust Co. of Scandon, Pa. v. Crane Co., 219 U. S. 24, 55 Law Ed. 72, 31 Sup. Ct. Rep. 140. See also upon principal, Brogan v. National Surety Co., 246 U. S. 257, 62 Law Ed. 703, 38 Sup. Ct. Rep. 250.

And in construing State statutes of similar import, the State courts have reached the same conclusions. See United States v. Jack, 124 Mich. 210, 82 N. W. Rep. 1049; Kerby v. Road Improvement Dist., 159 Ark. 21, 251 S. W. Rep. 356; Aetna Casulty & Surety Co. v. Henslee, 163 Ark. 492, 260 S. W. Rep. 414; Burton v. Seifert, 108 Va. 338, 61 S. E. Rep. 933; Fitzgerald v. McClay, 47 Neb. 816, 66 N. W. Rep. 828; Hickman v. Layne, 47 Neb. 177, 66, N. W. Rep. 298; Hipwell v. National Surety Co., of New York City, 130 Iowa 656, 105 N. W. Rep. 318; Hines v. Consolidated Coal & Lime Co., 29 Ind. App. 563, 64 N. E. Rep. 886; United States Fidelity & Guaranty Co. v. State, 71 Ind. App. 648, 125 N. E. Rep. 420; Dawson v. Northwestern Const. Co., 137 Minn., 352, 163 N. W. Rep. 772.

Judgment affirmed.

BROWN, C. J., AND WHITFIELD AND BUFORD, J. J., concur.