Day, J.
 

 The question involved in this case requires a construction of Section 2365-2, General Code, to wit, whether hauling of dirt, with trucks and men, at a given rate per hour, upon a state highway contract, constitutes “labor performed” in the carrying forward and completing of such contract, within the meaning of said section, and whether the surety upon the bond of the original contractor liable for such labor may be held, after proper notice as required by statute.
 

 While this case was tried to the court, a jury being waived, there were some slight contradictions in the evidence; yet the same were not so material but that the agreement between the head contractor and the sub-contractor is not essentially in dispute. It is claimed in the brief of counsel for plaintiff in error that Dill “did not enter into any contract with Burroughs to haul a certain quantity of dirt or to de any specified quantity of work or to remove dirt from a certain portion of the excavation which was
 
 *540
 
 being done by tbe steam shovel on this job.” However, both courts below construed tbe contract as one for tbe transportation, by truck, of dirt from one place to another for use in tbe construction of tbe road; and there is evidence in tbe record tending to support such view, as shown by tbe testimony of Elwood M. Dill, Luther Dill and W. D. Foraker, and tbe nature of the construction contract between tbe state and tbe principal contractor.
 

 Tbe agreement with Burroughs was that Dill was to furnish two trucks, with drivers for each truck, for which a charge was to be made of $2.50 per each hour tbe trucks were used, and that tbe trucks were to haul dirt from place to place on this particular highway job, and that Dill was to pay for tbe maintenance of tbe trucks and for all gasoline and oil required to operate tbe same. Tbe ultimate object and purpose to be attained by tbe agreement upon tbe part of Burroughs, tbe chief contractor, was tbe transportation, by truck, of dirt from one place to another, as might be required in tbe construction of this road and tbe fulfillment of bis contract. Dill on bis part was required to furnish tbe trucks and tbe drivers, to keep tbe trucks in repair, and to furnish all gasoline and oil, and in consideration of so doing be was to receive tbe compensation of $2.50 per hour per truck, so long as tbe same and their drivers operated in tbe discharge of tbe service required by tbe terms of tbe contract, to wit, tbe transportation of dirt from one point to another.
 

 If tbe transportation of this dirt required labor which employed a bucket and spade, or a wheelbarrow, or even a horse and wagon, with men to carry tbe bucket or push tbe wheelbarrow or drive tbe
 
 *541
 
 team, fill and empty the wagon, we do not believe tbat it would be contended tbat the accomplishment of the purpose of transportation of dirt from one point to another, by such means, would be otherwise considered than “labor performed.” The fact that the man on the truck accomplishes the purpose in a more efficient manner, in less time, than the man with the bucket, the wheelbarrow or the horse and wagon, makes it no less “labor performed.” The statute is no less applicable because there have been developed more efficient and speedier methods of accomplishing results, as evidenced by many examples that might illustrate progress in this mechanical age.
 

 This view has been recognized in other jurisdictions where the same question has arisen under statutes of similar nature.
 
 Southern Construction Co.
 
 v.
 
 Halliburton,
 
 149 Tenn., 319, 258 S. W., 409;
 
 London & Lancashire Indemnity Co.
 
 v.
 
 State, for Use of International Harvester Co.,
 
 153 Md., 308, 138 A., 231;
 
 Fulghum
 
 v.
 
 State, ex rel. Merritt,
 
 92 Fla., 662, 109 So., 644.
 

 The language in the last case noted is particularly apt, wherein the court, at page 670, (109 So., 644, 647), says: “It would indeed be a strained construction of the statute to hold that one who performs or otherwise supplies 'manual or physical labor alone is protected, while one who is aided in his labor by a team of horses and a wagon, or by mechanical devices or equipment, may not recover the agreed value of his work, but only that part represented by the physical labor alone. Carried to its ultimate conclusion, such a construction would in many eases exclude artisans who employ tools or
 
 *542
 
 machines in their labor. Clearing a right of way, excavating and grading, and hauling materials to and debris away from a road building project, clearly involves the performance of labor. It would be
 
 reductio ad absurdum
 
 to say that the parties to this sub-contract contemplated that the sub-contractor would himself, and with his own hands, clear the right of way and do the necessary excavating and grading for a road ten miles long. It is a matter of common knowledge, and was within the contemplation of both the statute and the bond here sued on, that the character of labor provided for in the principal contract is performed with the aid of others and with teams and mechanical appliances and devices. If a sub-contractor agrees with the principal contractor to perform a portion of that labor, and does so, he has indubitably supplied labor in the prosecution of the work. The fact that it was accomplished with the aid of others, and with teams and mechanical equipment, does not alter its essential character as labor. How the sub-contractor conducts his organization, whether he must pay out sums for ‘overhead expenses,’ and how he came into possession of the equipment he used, whether he owned it or hired it, is all beside the point. The fact that these costs to the sub-contractor may, and probably do, form component elements of his agreed price with the principal contractor for doing the work does not defeat his right to recover on the bond for the labor at the agreed price, where there is no charge of fraud or collusion.”
 

 On the other hand, our attention is called to the ease of
 
 Stein
 
 v.
 
 J. T. Stout Co., Inc.,
 
 9 N. J. Misc.
 
 *543
 
 R., 685, 155 A., 457, in which the opposite conclusion seems to have been reached.
 

 Without attempting to analyze the New Jersey case and reconcile the conclusion reached with that of other jurisdictions, we are unable to agree with that conclusion, even conceding the similarity of the statutes of New Jersey with our own. Under the facts of this record, construing the statute of our own state, Section 2365-4, General Code, which provides that the surety is liable for “all lawful claims of sub-contractors, material men and laborers,
 
 for labor performed
 
 and materials furnished in the carrying forward, performing or completing of said contract,” it is our conclusion that the surety is liable to the sub-contractor for. labor performed for the transportation of this dirt at the agreed price per hour by means of the labor of the drivers using the trucks in the performance of the agreement, and attaining the purpose and object of such agreement, to wit, the transportation of the dirt, all of which went into the permanent construction of the road, the subject of the principal contract.
 

 There is no difference in principle between the laborer who wheels his wheelbarrow full of dirt from one point to another on the job, and the man of larger facilities who transports that same material between the same points, thus accomplishing the purpose in a shorter period of time, and more efficiently. It is not a case of the hiring or rental of equipment merely, but it is the procuring of the results of the labor incident to the transportation of this dirt, at a stipulated price per hour by the means employed, to wit, the use of trucks and men to drive and operate the same, and as such it comes within
 
 *544
 
 the purview and meaning of Section 2365-2, General Code, and the sureties are liable under the bond of the original contractor for such labor.
 

 The judgment of the courts below will therefore be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias, Allen, Kinkade and Robinson, JJ-, concur.