THE J. B. McCRARY COMPANY AND HARTFORD ACCIDENT AND INDEMNITY COMPANY, *Plaintiffs in Error*, v. DADE COUNTY, FLORIDA, FOR THE USE AND BENEFIT OF E. I. DUPONT DE NEMOURS & COMPANY, A CORPORATION, *Defendant in Error*.

Opinion Filed November 3, 1920.

1. In an action by a material man on a bond given by a contractor to the county under the provisions of Chapter 6867, Laws of 1915, who has entered into a contract for the construction of public works, neither the plea of "never was indebted" nor the plea of "never promised" is applicable where the materials alleged to have been furnished by the material man were supplied to a subcontractor.

2. Chapter 6867, Laws of 1915, requiring that all bonds taken by the State or county for the performance of a contract for the construction of any public work shall contain a provision that the contractor or contractors shall promptly make payments to all persons supplying him or them any labor or material, and further providing that suit may be brought in the name of the obligee in the bond for the use and benefit of any person, firm or corporation who shall have furnished any labor or material in the prosecution of the said work against the contractor and sureties on the bond to recover the amount due such person, firm or corporation on account of labor or materials so furnished, applies in a case where labor or materials is furnished to a sub-contractor, and in such case suit may be maintained against the contractor and sureties on the bond to recover the value of the labor and materials so furnished.

3. The right of action provided by the statute in behalf of any person, firm or corporation supplying labor or material to a contractor or sub-contractor engaged in the construction of public works is secured only when a bond of the contractor is filed containing the additional obligations required by the statute that the contractor or contractors shall promptly

make payment to all persons supplying him or them labor and material in the prosecution of the work provided for in such contract.

4. A bond filed by a contractor who has assumed a contract for the construction of public works, which does not contain such obligation, but does contain a condition that he will carry out all the terms of the contract, and such contract contains a clause that the contractor will pay all just claims for materials and supplies that might be incurred by him in the performance of the work, is not such a bond as is required by the statute to protect third persons from whom the contractor or sub-contractor may obtain materials or labor, and no right of action is secured to such persons against the contractor and his sureties thereby.

A Writ of Error to the Circuit Court for Dade County; H. Pierre Branning, Judge.

Order reversed.

*Shutts, Smith & Bowen,* of Miami, *Little, Powell, Smith & Goldstein* and *Arthur G. Powell, of Atlanta, Ga.,* for Plaintiffs in Error;

*A. J. Rose,* for Defendant in Error.

ELLIS, J.—In June, 1918, E. I. DuPont de Nemours & Company, a corporation, brought an action in the Circuit Court for Dade County, in the name of the county, against the J. B. McCrary Company, a corporation, Hartford Accident and Insurance Company and J. F. Morgan and E. E. Hill as partners doing business as J. F. Morgan and Company, to recover the price and value of certain materials furnished by E. I. DuPont de Nemours & Company to J. F. Morgan and Company and used in building a certain road in Dade County. The action was

upon the bond and contract made and entered into by J. B. McCrary Company with the Hartford Accident and Insurance Company as surety on the bond, for the construction of the road, it being alleged that McCrary and Company had sublet the contract to Morgan and Company.

The allegations of the declaration in substance are that Dade County entered into a written contract with The J. B. McCrary Company in May, 1916, for the construction by the latter of a public highway in Special Road and Bridge District No. 2 in Dade County, a description of the road being "set forth in the specifications and profile referred to in the contracts as exhibits 'B and C' and made a part of said contract." That under the terms of the contract the J. B. McCrary Company agreed to "furnish all material and other supplies needed, or to be needed in the construction of the road, set forth in said contract and specifications heretofore referred to, and it further covenanted and agreed, among other things, that it would well and truly and promptly pay all just claims for materials and supplies that it might be incurred by said contractor in the performance of said work" to protect and save harmless the said Board and Special Road and Bridge District against all claims for materials and supplies due to any person by reason of "said contractor having been let the contract for the building and construction of said road," and to execute a surety bond satisfactory to said Board in the sum of one hundred and twenty thousand, seven hundred fifty dollars within eight days after signing the contract, and to fully comply with, abide by and perform all the terms, and conditions set forth in the contract, a certified copy of which was attached to the declaration as a part of it and marked Exhibit "A." The amount to be paid by

the county to the contractor under the contract was $241,500.00.

It was also alleged that on May 26th, 1916, the contractor, J. B. McCrary Company, executed the bond with Hartford Accident and Indemnity Company as surety in pursuance of the contract, the condition of the bond being that the contractor "should well and truly perform, carry out and abide by *all* the terms and conditions of said contract, specifications and profile hereinbefore referred to," etc. A copy of the bond was also attached to the declaration, made a part of it and marked Exhibit "B." It was alleged that the contractor, J. B. McCrary Company, afterwards sublet the contract to J. F. Morgan and Company, who entered upon the construction of the work and agreed with J. B. McCrary Company to carry out the contract and construct the road for the McCrary Company; that the "plaintiff" at the request of J. F. Morgan and Company supplied them with certain material "necessary for the construction and prosecution of said public highway," etc.; that the materials were valued at $5,047.50, and that the "said J. F. Morgan and Co. and The J. B. McCrary Company accepted the said supplies and material so furnished and provided by the plaintiff." That the contract between the county and McCrary Company is not yet fully performed, that the said claim for material is a "just claim," that no part of it has been paid except five hundred dollars, and the remainder is due and unpaid. That the plaintiff made the affidavit required by Chapter 6867, Laws of Florida, and procured from the Clerk of the Board of County Commissioners of Dade County, Florida, certified copies of the original contract and bond.

The second, third and fourth counts of the declaration

are common counts for goods bargained and sold, for work done and materials furnished and account stated.

Chapter 6867, Laws of 1915, is as follows:

"AN ACT to Provide That in All Bonds Taken by the State of Florida, any County of said State, or any City in said State, or any Political Subdivision Thereof, or Other Public Authority, for the Performance of a Contract for the Construction of any Public Building or the Prosecution and Completion of any Public Work, or for Repairs Upon any Public Building or Public Work, there shall be a Provision that the Contractor or Contractors shall Promptly Make Payments to all Persons supplying him or them Labor and Material in the Prosecution of the work; and, further Providing that Suit may be brought in the Name of the Obligee in said Bond for the Use and Benefit of any Person, Firm or Corporation, who shall have furnished any Labor or Material, in the prosecution of said work against the Contractor and the Sureties on said Bond to recover the Amount due such Person, Firm, or Corporation, on Account of the Labor, or Materials, so furnished.

*"Be It Enacted by the Legislature of the State of Florida:*

"Section 1. That, hereafter, any person, or persons, entering into a formal contract with the State of Florida, any county of said State, or any city in said State, or any political subdivision thereof, or other public authority, for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building, or public work, shall be required, before commencing such work, to execute the

usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor, or contractors, shall promptly make payments to all persons supplying him, or them, labor and material in the prosecution of the work provided for in such contract; and any person, or persons, making application therefor, and furnishing affidavit to the Treasurer of the said State of Florida, or any City, or County, or political subdivisions, or other public authority, having charge of said work, that labor or materials for the prosecution of such work has been supplied by him, or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond, upon which, said person, or persons, supplying such labor and materials, shall have a right of action, and shall be authorized to bring suit in the name of the State of Florida, or the City, County, or political subdivision, prosecuting said work for his, or their, use and benefit, against said contractor, and sureties, and to prosecute the same to final judgment and execution; Provided that such action, and its prosecution, shall not involve the State of Florida, any County, City or other political subdivision, in any expense.

"Approved June 5, 1915."

The condition and obligations of the bond were as follows:

"The condition of the above and foregoing obligation is such, that, whereas, the J. B. McCrary Company has entered into a contract with the Board of County Commissioners of Dade County, Florida, for the furnishing of all labor, materials and supplies and the construction of a road in Special Road and Bridge District No. 2 of Dade County, Florida, said road being more particularly de-

scribed in said contract, specifications and profile, and being known as 'The Miami-Marco part of the Tamiami Trail,' in accordance with the terms and conditions set forth in said contract, specifications and profile hereto attached, which said contract specifications and profile are marked respectively Exhibits 'A,' 'B,' and 'C' and made part of this bond as fully and completely as though said contract, specifications and profile were fully set forth in this bond.

"Now, therefore, if the said principal, The J. B. Mc-Crary Company, a Corporation as aforesaid, shall well and truly perform, carry out and abide by all of the terms and conditions of said contract, specifications and profile hereinbefore referred to, and build and complete said road in accordance with the terms and conditions of said contract and specifications hereinbefore referred to, and in a manner satisfactory to the Board of County Commissioners of Dade County, Florida, then this obligation to be void, else to remain in full force, virtue and effect."

The defendants J. B. McCrary Company and Hartford Accident and Indemnity Company moved the court to require the plaintiff to amend its declaration by alleging whether it seeks to recover in an action of assumpsit or covenant upon the indebtedness against J. F. Morgan & Company, or upon the bond described in the declaration. They also moved to strike the first count upon the ground that it declares upon an instrument under seal in covenant whereas the praecipe and summons recite that they were issued in assumpsit. They also demurred to the first count upon the grounds that it stated no cause of action against them; that it showed no right in the plaintiff to recover against them on account of the indebtedness due by J. F. Morgan & Company; that it is vague

and indefinite in that it does not appear whether the plaintiff seeks to recover on the land or upon the debt due by J. F. Morgan & Company; that the allegations are contradictory and inconsistent; there is a misjoinder of parties; it is duplicitous and multifarious and it declares in covenant while the action was assumpsit as shown by the praecipe and summons.

J. F. Morgan & Company demurred to the declaration upon the grounds that the action could not be maintained against them. that they were improperly joined; there was no privty between Dade County and them; that under the facts alleged the provisions of Chapter 6867 are not applicable to them; that they were not contractors with Dade County within the meaning of Chapter 6867; they were not parties to the bond; that the second, third and fourth counts of the declaration show a variance between the Exhibit "C" and the said counts and are repugnant to it, and for misjoinder of parties.

In October, 1918, the court ordered the names of J. F. Morgan and E. E. Hill, partners as J. F. Morgan & Company, to be stricken from the declaration as partners, and permitted the plaintiffs to amend in accordance with the order.   On the same day the demurrer of McCrary & Company and the Hartford Company was overruled, the motion for compelling an amedment denied, as was also the motion to strike the first count.   The plaintiffs were allowed to amend the praecipe and summons to conform to the action as developed in the first count.   The defendants pleaded the general issue to the second, third and fourth counts, and "never promised as alleged" and "never was indebted as alleged" to the first count.   There was also a third plea to the first count on "equitable grounds" in which the defendants admitted making the contract for

constructing the road and the execution of the bond; it averred that thereafter McCrary & Company contracted with J. F. Morgan and Company for the construction of the road, a copy of the contract being attached to the plea; that the bond given by J. B. McCrary and Company with the Hartford Company as surety referred to in the declaration did not contain the additional obligation provided by Chapter 6867 so as to require McCrary and Company to make payments to all persons supplying labor and material in prosecution of the work, nor did the contract between McCrary and Company and Dade County require the defendant, McCrary and Company, or its surety to pay the bills of subcontractors for supplies.

The plaintiffs moved to strike the third plea of defendant upon the ground that it presented no defense which in equity would be good ground for relief against a judgment at law. This motion was granted and the plaintiffs joined issue upon all the remaining pleas and the parties went to trial.

By stipulation between the parties the execution of the documents referred to in the declaration as Exhibits "A" and "B" were admitted. When offered in evidence the defendants objected to the introduction in evidence of Exhibit "A" upon the ground that the contract created no liability against J. B. McCrary Company, upon which the action sued upon could be based. This objection was overruled. Objection was also made to the introduction in evidence of Exhibit "B" upon the ground that it was immaterial; that the conditions of the bond and contract did not support the allegations of the declaration and because the conditions of the bond were not sufficient to support the action against J. B. McCrary Company. This objection was also overruled and the two documents admitted in evidence. The defendants duly excepted.

Depositions of J. F. Morgan were read in evidence. Objections to the issuing of the commission were made by defendants, also to the reading in evidence of the depositions upon the ground that the witness was before the court. These objections were overruled and the depositions read. The execution of the contract between J. F. Morgan and Company and J. B. McCrary Company was established by this witness and read in evidence over defendants' objection, also Morgan and Company's acknowledgment of their debt to the plaintiff, E. I. DuPont de Nemours & Company, by letter, which was duly objected to by defendants. The defendants moved the court to direct a verdict for them, but the motion was denied.

Upon motion of the plaintiffs the court directed a verdict for them, a motion for a new trial was denied and judgment entered for the plaintiffs.

The act referred to above requires that the contractor should execute the "usual penal bond" with the "additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and material in the prosecution of the work provided for in such contract."

The bond sued upon contains no such condition nor obligation. The supplies were not furnished to the contractor J. B. McCrary Company, the obligor, but to J. F. Morgan and Company, a partnership which had undertaken the work under a contract with J. B. McCrary Company and who had not executed the bond sued upon, nor were they parties to the action.

No attempt was made to prove a case under the common counts. The evidence was not applicable to them, nor was the action based upon any theory that could sup-

port such counts against the defendant McCrary Company and its surety.

The pleas to the first count which were "never promised" and "never was indebted," were inapplicable to an action on the bond given by a contractor to the county for the construction of public works where the material alleged to have been furnished was supplied to a sub-contractor. The declaration showed upon its face that there was no privity between the plaintiff for whose benefit the action was brought and the defendant McCrary Company's liability if any existed, rested not upon its relation to the sub-contractor nor to the county, but upon the bond which it was claimed held McCrary Company to "make payments to all persons supplying him or them (contractor or contractors) labor and material in the prosecution of the work," etc. The bond was the foundation of the action not merely the inducement. The pleas therefore were not responsive, they were immaterial. Whether true or false they did not affect the rights of either party if they were intended to relate to the alleged debt due to the plaintiffs, and they were not applicable to a declaration in debt on bond. The plaintiff could have ignored them and taken a default. If the jury had found for the defendant the plaintiff would have been entitled to its verdict *non obstante* in so far as the rights of the parties depended on these pleas. See Huling v. Florida Savings Bank, 19 Fla. 695.

No assignment of error based upon any incident or transaction occurring during the trial would be considered because the plaintiff being entitled to a default all the material allegations of fact in the declaration were admitted, and the only question was one of damages or amount of the plaintiff's claim. Upon this the defend-

ants were heard and no assignment of error is based upon that phase of the case.

If the defendants desired to test the existence of the debt alleged to be due by Morgan and Company to the plaintiffs, the non-payment of which was assigned as the breach in the action on the bond, they may have done so by an appropriate special plea; but a plea in such an action as this that the defendants were not indebted to the plaintiffs was immaterial. It was not the McCrary Company's indebtedness to the plaintiff, but Morgan and Company's indebtedness to the plaintiff that gave them under the peculiar circumstances of this case, so they claim, their right to bring the action on the bond.

The only question presented therefore by the record is whether the demurrer interposed by McCrary Company and its surety to the declaration should have been over-ruled.

The plaintiffs in error contend that the provisions of the act do not extend to material, men and laborers supplying material and labor to sub-contractors, not only because they are not expressly included within the terms of the act, but if they were, the act would then be broader than its title and therefore unconstitutional.

Section 16 of Article III of the Constitution provides that each law enacted by the Legislature shall embrace but "one subject and matter properly connected therewith." It also provides that the "*subject* shall be *briefly* expressed in the title," etc.

The subject of the Act is the protection of persons who may supply labor or material for the construction of public works. The title of the Act was not formulated

evidently in view of the constitutional admonition that the *subject* of the Act should be *briefly* stated in the title. The scope of the Act, however, is not narrowed by the unnecessary verbiage of its title, although the real purpose of the Act is almost smothered by it. The real purpose of the Act is shown by the following words in the title, which appear under the overburden of many lines, *viz.* : "Providing that suit may be brought in the name of the obligee in said bond for the use and benefit of any person, firm or corporation who shall have furnished any labor or material in the prosecution of said work," etc. This purpose grows out of the fact that a laborer or material man who furnishes labor or material for the construction of any public work can have no lien upon the work as is provided for under the mechanics and laborers lien statutes upon private property. So provision was made for such persons by the Act. Public works of much consequence are usually prosecuted under contract. The material men and laborers rarely, if ever, in such case come in contact or have any relation with the State, county or city officials, their material is furnished or the labor supplied at the request of some one, whether as an individual or as the representative of some corporation engaged in prosecuting the public work.

There is no conceivable objection to this method of securing the payment for material and labor furnished in the prosecution of any public work. No hardship is imposed upon either the contractor or his surety. They know before the contract and bond are executed that any person supplying labor or material in the prosecution of the work is intended to be protected by the bond. If any part of the work is sublet or the contractor assigns his contract, it is an easy matter for him to take security from the sub-contractor that all obligations for labor and

material shall be paid. To place the construction upon the act contended for by plaintiffs in error would be to narrow its beneficent purpose and destroy in a large measure the expressed purpose of the Act. The Act in question was copied from the Act of Congress of August 13, 1894, 28 Stats. at Large 278, Chap 280 U. S. Comp. Stats. 1901, p. 2523, and at the time of its passage the Act of Congress had been construed to embrace within its provisions all persons furnishing labor or material in the construction of public works, whether directly to the contractor or to the sub-contractor. See United States for the benefit of Hill v. American Surety Company of New York, 200 U. S. 197, 26 Sup. Ct. Rep. 168, 50 L. Ed. 437. See also French v. Powell, 135 Cal. 636, 68 Pac. Rep. 92; Mann v. Corrigan, 28 Kan. 194.

Counsel argue with much cleverness that the words "him or them" which appear in the statute refer only to the "contractor or contractors" and not to sub-contractors, and that the provisions of the Act are expressly limited to material men and laborers supplying the original contractor with material or labor. That the Supreme Court of the United State in the case of Hill v. American Surety Company, *supra,* brought to these words appearing in the Act the broadening purpose expressed in the title of the Federal Act and eliminated the words "him or them" from the Act practically. That as the title to the Florida Act contains the words "him or them" the purpose of the Legislature is thus shown to limit the provisions of the Act to persons supplying the contractor with material or labor. The words "him or them" as they appear both in the title and body of the Act relate to the provision required to be inserted in the bond to be given by the contractor. A provision shall be inserted in the bond that the "contractor or contrac-

tors shall promptly make payments to all persons supply-
ing him or them labor and material." The Supreme
Court of the United States points out that the contractor
gets the benefit of the completed work whether he com-
pletes it himself or through a sub-contractor, and the
labor and material supplied to his sub-contractor is as
effectually supplied to him as if he had directly hired the
labor or bought the material.

Counsel for plaintiffs in error contend that the bond
does not contain the statutory condition and obligation,
therefore the right to bring the action did not exist. We
agree with them in this position. The right of action is
secured only when a bond of the contractor is filed which
contains the *"additional obligations"* that such "con-
tractor or contractors shall promptly make payment to
all persons supplying him or them labor and material
in the prosecution of the work provided for in such con-
tract." The right to recover on such bond arises when
the debt incurred by the contractor or contractors,
whether original or sub-contractors, for material and
labor in the prosecution of the public work is due and
has not been paid.

The "ordinary penal bond," that is the ordinary bond
for the faithful execution of the contract according to its
terms is all the protection needed for the State, county
or city, but the additional obligation named is required
to be included in such bond in order that the protection
of the material man and laborer may be secured.

Mr. Justice Brown, speaking for the court in United
States Fidelity & Guaranty Co. v. Golden Pressed & Fire
Brick Co., 191 U. S. 416, 48 L. Ed. 242, 24 Sup. Ct. Rep.
142, said that the covenant is inserted for an entirely
different purpose from that of securing to the govern-

ment the performance of the contract. In that covenant the surety guarantees nothing to the principal obligee, the government. In that case the bond given by the contractor was conditioned not only upon the faithful performance of his work to erect the building according to his contract and to any changes or additions made thereto, but to "promptly make payments to all persons supplying him labor or material in the prosecution of the work contemplated by said contract."

Counsel for defendants in error contend that as the contract contained a clause that J. B. McCrary Company would "promptly pay all just claims for material, labor, supplies, equipment and damages, including any claim for personal injury that may be incurred by said contractor in the performance of said work and all damages that may be occasioned to any person, persons or corporation by reason of negligence of said contractor or its agents, servants or employees, and does hereby covenant and agree to protect and save harmless the said Board and Special Road and Bridge District No. 2 of Dade County, Florida, against all claims for material, labor, damages and supplies due any person, persons, firms or corporations by reason of said contractor having been let the contract for the building and construction of said road." And as the contract was made a part of the bond by its terms, that the statute was in substance complied with and the right of action upon the bond against McCrary Company and its surety secured to all persons supplying material and labor. But the covenant in the bond was to perform and carry out and abide by all the terms and conditions of the contract, etc., and build and complete the road in accordance with the terms and conditions of said contract, etc. In the case of Mankin v. United States to Use of Ludowici-Celadon Co., 215 U. S.

533, 54 L. Ed. 315, 30 Sup. Ct. Rep. 174, the bond contained the statutory covenant. So in United States v. Ansonia Brass & Copper Co., 218 U. S. 452, 54 L. Ed. 1107, 31 Sup. Ct. Rep. 49, and in Title Guaranty & Trust Co. of Scranton, Pa. v. Crane Co., 219 U. S. 24, 55 L. Ed. 73, 31 Sup. Ct. Rep. 140, and in United States Fidelity & Guaranty Co. v. United States for benefit of Bartlett, 231 U. S. 237, 58 L. Ed. 200, 34 Sup. Ct. Rep. 88, and in Equitable Surety Co. v. United States to Use of W. McMillan & Son, 234 U. S. 448, 58 L. Ed. 1394, 34 Sup. Ct. Rep. 803.

In the latter case MR. JUSTICE PITNEY, quoting from the case of United States v. National Surety Co., 92 Fed. Rep. 549, as follows: "The obligation has a dual aspect, it being given in the first place to secure to the government the faithful performance of all obligations which a contractor may assume toward it; and in the second place to protect third persons from whom the contractor may obtain materials or labor; and that these two agreements are as distinct as if contained in separate instruments," said: that the construction given to the Act in the 92 Fed. is correct. "The object of the legislation was to give legal sanction to the 'additional obligation' that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in the contract, and to give such a laborer or material man a right to bring an action if necessary on the bond."

A surety's obligation is strictly construed and will not be extended by implication to conditions not clearly within the terms of the undertaking. There is no question but that both contract and bond were executed for the benefit of the county and not for the benefit of ma-

terial men and laborers who might supply material and labor for the work. The condition of the bond secured the performance of the contract; this condition was for the benefit of the county, there was no privity between third persons and the county, nor between them and defendants, the rights of the material men and laborers depended entirely upon the statute and its provisions were ignored in the drafting of the bond. See Searles v. City of Flora, 225 Ill. 167, 80 N. E. Rep. 98; Armour & Co. v. Western Const. Co., 36 Wash. 529, 78 Pac. Rep. 1106; Scott-Graff Lumber Co. v. Independent School Dist. No. 1, 112 Minn. 474, 128 N. W. Rep. 672; Brown Bros. v. Columbia Irr. Dist., 82 Wash. 274, 144 Pac. Rep. 74; Union Sewer Pipe Co. v. Olson, 82 Minn. 187, 84 N. W. Rep. 756.

The order overruling the demurrer to the declaration was error, so the judgment is reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.

WHITFIELD, J., Concurring:

The persons to whom and the defaults for which a surety may be liable on a contract of suretyship are determined by the principles of the common law or by the provisions of statute law that are applicable to the terms of the particular contract. Where the common law does not give a right of action against the surety to persons who are not parties to a surety bond and where a statute expressly requires such a bond to contain stated provisions, which, when so incorporated, under the statute give third persons rights of action against the surety, but such statutory provision is not in form or in substance made a part

of the bond, a holding that third parties have a right of action and of recovery against the *surety* is not authorized and may be a violation of the organic right to due process of law.

The statute not only provides that any person or persons entering into a formal contract with public authorities for the construction, completion or repair of any public building or work "shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor, shall promptly make payments to all persons supplying him or them labor or material in the prosecution of the work," but the statute also expressly provides that any person or persons furnishing labor or material shall have a right of action and recovery against the contractor and his sureties for unpaid amounts due for labor and material used in the public work. This statute, when complied with by the execution of a bond conditioned as is expressly required, is properly held to give a right of action and recovery to those who furnish labor and material to the sub-contractor as well as the contractor, since the right of action as specifically given removes the ambiguity in the preceding provision of the statute.

While the statute expressly makes it the duty of the public authorities to require the contractor to execute a bond "with good and sufficient sureties" conditioned as prescribed, yet the statute imposes on the sureties no duty as to the execution of the bond, and the failure of the officials to do their duty is not chargeable to the sureties. And the statute does not impose on the sureties the "additional obligations" stated in the statute unless the statutory condiions are made a part of the bond.

Where a particular statutory obligation to pay, that is dependent upon specific conditions, is to be relied on, care should be taken to see that the conditions on which the statutory liability rests, have been complied with before credits are extended.

In this case the condition of the bond does not contain the "additional obligations" in the statutory form so as to impose a liability to third persons not parties to the bond; but the express condition is that the McCrary Company "shall well and truly perform and carry out and abide by all of the terms and conditions of said contract" made a part of the bond. The contract contains a covenant that the McCrary Company, the contractor, will "promptly pay all just claims for material, labor, supplies, equipment and damages * that may be incurred *by said contractor* in the performance of said work." This quoted language of the bond and the contract cannot fairly be held to be equivalent to the express statutory provision which imposes a liability on the surety in the bond, on which the statute specifically gives a right of action to third persons not parties to the bond, where the statutory provision is incorporated in the bond. The obligation of the surety in this case cannot legally be extended beyond the liability imposed by the terms of the bond under the principles of the common law; and the common law liability of the surety does not extend to the real plaintiff here. The statutory obligation cannot legally be imposed upon the surety because the statutory provision was not in substance or in effect incorporated in the bond as required by the statute, and the statute does not impose the added liability unless the required provision is made a part of the bond. Even if the bond as executed imposes a liability in favor of those who furnished labor or material to the *contractor*, it certainly is not so conditioned

under the common law as to give a right of action to those who furnished labor or material to *sub-contractors;* and the statutory obligation imposing such a liability was not assumed by the sureties.