J. A. KIDD and SOUTHERN SURETY COMPANY, a Corporation, *Plaintiffs in Error, v.* CITY OF JACKSONVILLE, a Municipal Corporation, for the Use and Benefit of HIRSCH LUMBER COMPANY, a Corporation, *Defendant in Error.*

Division A.

Opinion filed March 2, 1929.

Petition for rehearing denied March 26, 1929.

*Giles J. Patterson,* for Plaintiff in Error;

*Marks, Marks & Holt,* for Defendant in Error.

ELLIS, J.—In November, 1922, J. A. Kidd, one of the plaintiffs in error, entered into a contract with the City of Jacksonville under which Kidd agreed to do certain construction work upon and to furnish certain materials for the same in connection with the municipal docks of the City of Jacksonville. In order to secure the performance of his contract and make payments to all persons supplying him with labor and materials in the prosecution of the work provided for in the contract, he entered into a bond, with the Southern Surety Company as surety, payable to the City of Jacksonville in the sum of Fifty-one Thousand Two Hundred and Ten Dollars. The "additional obligation" provided for by the statute is contained in the bond. See Section 3533, Rev. Gen. Stats., 1920; McCreary et al. v. Dade County, 80 Fla. 652, 86 So. R. 612.

The City of Jacksonville, for the use of Hirsch Lumber Company, brought an action in July, 1923, against Kidd and the Southern Surety Company upon the bond. The declaration in several counts alleged that the Hirsch Lumber Company supplied to Kidd in the prosecution of the work certain lumber of the value of $25,886.37, and the plaintiff therefore sued the defendant for the sum of $15,877.91 for money payable for lumber sold and delivered. The breach alleged was that Kidd did not well and truly promptly make payment to the Hirsch Lumber Company for the materials, but has refused and still refuses to make the payment saving and excepting the sum of $10,-000.00, so there was a balance due on the purchase price of the lumber in the sum of $15,877.91 with interest.

The third count of the declaration is not materially different, merely alleging some details in the transaction by which Kidd became obligated to pay for the lumber supplied and delivered to Kidd in the prosecution of the work.

An amendment of the declaration was filed alleging in each count that the "lumber so furnished was in accordance with and complied with the specifications provided for and contained in the said contract between the said J. A. Kidd and the said City of Jacksonville, Florida." The amendment was allowed in April, 1926.

Prior to the allowance of the amendment there was a demurrer to the declaration which was overruled. The second and third grounds of the demurrer were general in terms that the declaration stated no cause of action and that the facts alleged were insufficient to constitute a cause of action. Afterward certain pleas were interposed and demurrers to them were sustained.

Upon a writ of error to the judgment which was entered this Court reversed the judgment on the ground that the pleas denied performance by the plaintiff of a condition precedent and tendered a material issue of fact, "if it could be construed that the general allegations of performance contained in the declaration were in effect an allegation that the material had been furnished by plaintiff in conformity with the specifications stipulated in the contract and made a part of the bond, which issue was not presented by a plea of general issue." See Kidd v. City of Jacksonville, 91 Fla. 380, 107 So. R. 677.

The above decision was rendered in March, 1926. The above amendment was prepared and filed before the decision of the Supreme Court in the case but not allowed until after the decision.

In May, 1926, the Surety Company demurred to the declaration as amended. The demurrer contained the two gen-

eral grounds above mentioned as well as others, among which the fifth and ninth presented the point that the declaration did not allege that the lumber supplied by the plaintiff to the defendant was used in the prosecution of the work mentioned. The demurrer was sustained in June, 1926.

The record does not disclose that any further amendments were made to the declaration, but appearing in the record immediately following the order on demurrer is a document entitled "Exhibit A" purporting to be a copy of advertisement and specifications for "furnishing materials for constructing wooden relieving platform, anchor pile system and fender pile system, and for the construction of a steel bulkhead wall. September, 1922." This document contained in about twenty-six pages of the record immediately following which there appears the demurrer above mentioned filed as of the 27th day of May, 1926, and sustained on the 18th day of June, 1926.

The record then discloses that on the 1st day of July, 1926, the Southern Surety Company filed its "Demurrer to Amended Declaration," in which reference is made to a further amendment of the declaration made June 18, 1926. That demurrer contained the same grounds as the former with the exception of the eighth which, in the former demurrer, raised the point that the specifications were not attached to the declaration or made a part thereof although it appears that the same were constituted a part of the bond sued upon. The last demurrer was overruled.

Then the Surety Company pleaded that it never was indebted as alleged; third, that the Lumber Company did not supply to Kidd in the prosecution of the work the lumber and materials referred to in the declaration; fourth, that the lumber and materials referred to in the declaration and alleged to have been supplied by the Lumber Company

were not used by the said J. A. Kidd in the prosecution of the work referred to in the declaration. There were nine pleas.

In the view we take of the case it is unnecessary to refer to them. A demurrer was interposed to the fourth, sixth, seventh, eighth and ninth pleas and a motion to strike the first and second pleas. The demurrer was sustained and the motion to strike granted. Issue was then joined on the third and fifth pleas.

Then on November 16, 1926, the Surety Company filed two amended pleas, a demurrer to which was sustained. J. A. Kidd pleaded that he had been adjudged a bankrupt and a trustee was appointed of his estate; that the plaintiff's claim was listed in the schedule of Kidd's debts and that the plaintiff received on account of the claim the sum of $5,495.55 and subsequently Kidd was discharged in bankruptcy.

There appears to have been no demurrer to that plea nor joinder of issue upon it. The record states that the parties went to trial on the issues joined between them on February 8, 1927, and that there was a verdict for the plaintiff.

According to the record two verdicts were rendered in the case. One as follows:

"We the jury find in favor of the plaintiff and against the defendants and assess the plaintiff's damages at $10,-750.89 principal and $14,667.04.

So say we all."

And the other as follows:

"We the jury find in favor of the plaintiff and against the defendants and assess the plaintiff's damages at $10,-750.89 principal and $3916.15 interest, a total of $14,-667.04."

Judgment was apparently entered on the latter. A motion for a new trial was denied.

From the condition that the record is in, this Court is left to the inference that the trial court did not consider the fourth plea of the defendant as containing any merit and that the deficiencies of the declaration were fully remedied by the filing of the document entitled "Exhibit A." The fourth plea presented the point definitely that the lumber and materials referred to in the declaration and alleged to have been supplied by the Lumber Company were not used by the said J. A. Kidd in the prosecution of the work referred to in the declaration.

There was no error in sustaining the demurrer to that plea nor in overruling the second demurrer to the declaration.

This action was brought by a materialman against the principal and the surety on a bond given under Section 3533, Rev. Gen. Stats. of Fla., 1920, to the City of Jacksonville.

In the case of McCrary Co. v. Dade County, 80 Fla. 652, 86 So. R. 612, the action was brought to recover the price and value of certain materials furnished by the plaintiff to Morgan and Company, a sub-contractor of McCrary and Company, which materials were used in building the road which McCrary and Company had undertaken to build. It was held that the bond sued on did not contain the statutory "additional obligation" so the declaration did not state a cause of action. In commenting upon the statute, Mr. Justice WHITFIELD, in a concurring opinion, said: "The statute  *  *  *  expressly provides that any person or persons furnishing labor or material shall have a right of action and recovery against the contractor and his sureties for unpaid amount due for labor and material *used* in the public work." The question whether the material supplied

by a materialman to the contractor had to be *used* in the
prosecution of the work in order to give the materialman
a cause of action against the surety for unpaid materials
was not presented in that case.

In the case of Fulghum et al. v. State, 92 Fla. 662, 109
So. R. 644, the items for which recovery was had consisted
of the amount due for labor supplied in the performance of
the work. Mr. Justice STRUM, who wrote the opinion, how-
ever, said: ''The protection of the statute is not limited to
those who 'perform.' labor, but it expressly extends to those
who 'supply' labor. To supply labor is to provide or fur-
nish. One may supply labor by performing it himself. But
he may also supply labor by providing others to do the
work. In either case the labor is 'supplied.' ''

The amendment to Section 3533 of the Revised General
Statutes adopted by the Legislature in 1925 added to the
phraseology of the ''additional obligation'' which the bond
should contain the following words: ''And supplies, *used*
directly or indirectly by the contractor, contractors, sub-
contractor or sub-contractors.''

With the exception of the word ''used'' in the Act of
1925 amending the phraseology of the ''additional obliga-
tion,'' the Act, in the light of the McCrary case, *supra,* was
wholly unnecessary because that case held that the benefi-
cent purpose of Section 3533, Rev. Gen. Stats., 1920, Chap.
6867, Acts 1915, extended to all persons furnishing labor or
material in the construction of public works, whether di-
rectly or indirectly to the contractor or the sub-contractor,
because at the time of the adoption of the Act, which was
copied from the Act of Congress of August 13, 1894, 28
Statutes at Large 278, Chap. 280 U. S. Comp. Statutes 1901,
p. 2523, the Act had been so construed by the Supreme
Court of the United States. That construction therefore was
adopted by the State of Florida in adopting the Act of

1915, *supra,* insofar as that construction is not inharmonious with the spirit and policy of our own general legislation upon the subject. See Duval v. Hunt, 34 Fla. 85, 15 So. R. 876; Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 So. R. 761.

It is important to consider therefore if the Federal Courts in construing the original Federal Act which this State adopted in 1915 held that the material furnished to the contractor should be used in the prosecution of the work in order to give the materialman a right of action on the bond.

In the case of United States v. Morgan, 111 Fed. Rep. 474, United States District Judge Webb held that for materials which were used in the structure, which were fortifications on Diamond Island, that actually entered into the construction of the fortifications, the plaintiff could recover, but for the materials supplied and used in the construction of dump cars, skids, grout tubs, conveyors and other accessories built or constructed by the contractor in the nature of tools and appliances to be used by him for his own convenience and advantage in the execution of the contract the materialman could not recover. So that the claim ·for $4,389 the court allowed judgment for $2,107, which represented the price of the material actually used and which entered into the structure.

. That case is of no value in determining whether the price of material supplied to a contractor which is designed to enter into the actual construction of the building and become a part of it but is not in fact used because of some change either in plans or some change in the physical or financial ability of the contractor over which the materialman has no control and can in no wise influence, may be recovered by the materialman in an action on the bond.

The Federal Act of August 13, 1894, was amended by

Congress by Act of February 24, 1905, Chap. 778, 33 Stats. at Large 811, U. S. Comp. Stat. Supp. 1909, p. 94, so that the "additional obligation" should be: "That such contractor or contractors shall promptly make payments to all persons supplying him or them *with* labor and materials in the prosecution of the work provided for in such contract; *and any person, company or corporation who has furnished labor or materials used in the construction or repair of any public building or public work and payment for which has not been made.*" The words *underscored* constitute the amendment to the "additional obligation" to be written in the bond.

The amendment quoted did not change the obligation unless its purpose was to require that the labor and materials furnished must be used in the construction or repair of the building or public work before the person furnishing it to the contractor can maintain his action on the bond in case payment for the material and labor is not made.

But the Supreme Court of the United States, in the case of Brogan v. National Surety Company, 246 U. S. 257, 62 L. Ed. 703, said that the change in phraseology was not significant. Referring to Mankin v. Ludowici-Celadon Co., 215 U. S. 533, 54 L. Ed. 315, said it was pointed out in that case that " 'in respect to the condition of the bond required to be given, the language of the amended Act is precisely the same as that contained in the Act of August 13, 1894'," and that in United States for the use of Hill v. American Surety Co., 200 U. S. 197, 50 L. Ed. 437, it was said that "in respect to the persons entitled to the benefit of the bond there has been no material change in the Act." The latter case was referred to by this Court in the McCrary case, *supra.*

But in none of the above cases cited by appellant's counsel was the point here presented descided. These cases all

hold that the amendment of 1905 materially amended the Act of August 13, 1894, but not in respect to the condition of the bond required to be given nor as to the class of persons entitled to sue upon it; that persons supplying labor and material directly or indirectly to the contractor or subcontractor were as well under the amendment as under the original Act entitled to bring their action on the bond.

In case of Brogan v. National Surety Company, *supra*, it was held that groceries and provisions furnished a contractor for a public work for use in a boarding house which, on account of the absence of other accommodations, it was obliged to maintain for its laborers are materials used in the prosecution of the work within the meaning of the Act and of the bond given in pursuance of its requirements, though they would not have been such had the boarding house been conducted by the contractor as an independent enterprise undertaken solely for the sake of profit. Several decisions of the United States Supreme Court were cited by Mr. Justice Brandies, who wrote the opinion in that case, in support of that interpretation of the language of the Act and condition of the bond.

But those cases are not helpful further than to show that the phrase "supplying labor or materials in the prosecution of the work" is not limited in its meaning to the structure, building or thing produced into which the labor or material must actually enter and become an integral part of it. As Mr. Justice BRANDIES said in the Brogan case: "The Court has repeatedly refused to limit the application of the Act to labor and materials directly incorporated into the public work."

From all the authorities that we have examined our conclusion is that the word "used" as it appears both in the Federal Act of 1905, *supra*, and the Florida Act of 1915, *supra*, effected no change whatsoever in the "additional

obligation'' as it appears either in the Federal Act of August 13, 1894, or the Florida Act of 1915, Sec. 3533, Rev. Gen. Stats.; that the materials supplied in the ''prosecution of the work'' means materials which form an integral part of the work and are necessarily involved in it. In a sense it may be said that the tools and accessories of the contractor are necessarily involved in the work and therefore materialmen who supply the contractor with such tools or materials for such accessories would be included in the class of persons protected by the obligation. It would seem, therefore, that there must be some qualification of the above definition and that qualification must be found in the government's contract with the contractor or the special circumstances, as Mr. Justice Brandies said, under which the supplies were furnished. Such facts, said he, are not only material but decisive.

The McCrary case, *supra*, is decisive of the point that it is immaterial whether the materials furnished are supplied directly or indirectly to the contractor or sub-contractor.

It follows from the views above expressed that the materials supplied must not only substantially conform to the specifications required for such materials but under the special circumstances of the case such materials must form an integral part of the work and be necessarily involved in it.

As was said in the case of Title Guaranty & Trust Co. v. Puget Sound Engraving Works, 163 Fed. 168: ''By keeping in mind that the intent of the statute is that material and labor *actually contributed* to the the construction of the work shall be paid for, and thus that the materialman and the laborer shall be protected, construction of the statute and bond is quite simple.''

We think that the allegation in the declaration of the terms used by the statute in defining the ''additional obliga-

tion'' are quite sufficient according to the requirements of good pleading in alleging the facts necessary to bring the plaintiff within the class of persons protected by the Act; that the burden is upon the plaintiff to prove the allegation by evidence showing that the materials supplied not only conformed to the required specifications but under the special circumstances of the case former an integral part of the work and were necessarily involved in it.

Any views expressed in the case of Kidd v. City of Jacksonville, *supra,* contrary to the views above expressed are modified.

We think it is no defense to an action brought by a person in the class protected by the ''additional obligation'' against the surety for materials supplied to the contractor that the latter transferred his title to the materials furnished and the work for which they were supplied was carried on by the latter using such material as an integral part of the work.

Under such circumstances the Surety Company does not subject itself to a double liability. The materials were furnished or supplied only once. The person to whom they were supplied or his representative has ample opportunity to protect himself by appropriate security taken from his successor or sub-contractor.

If the contractor purchases materials and afterwards diverts them to other and different uses the materialman by such bad faith of the purchaser must stand the loss because it is he who is thereby defrauded and the government has derived no benefit from the use of the materials. So much risk as is thus involved in the transaction between the materialman and the contractor the former must assume by reason of the faith that he reposes in his customer.

The demurrer to the declaration was therefore properly sustained.

The demurrer to the fourth plea was also properly sustained.

We think the court erred in directing a verdict for the plaintiff because the proof was not complete as to the use of the materials in the actual construction of the work within the meaning defined herein.

Reversed.

TERRELL, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND BUFORD, J., concur in the opinion and judgment.

STRUM, J., disqualified..