114 So.2d 478 (1959)
PHOENIX INDEMNITY COMPANY, a corporation, Appellant,
v.
BOARD OF PUBLIC INSTRUCTION OF ALACHUA COUNTY, Florida, Board of Public Instruction of Clay County, Florida and Board of Public Instruction of Putnam County, Florida, for the Use and Benefit of Employers Insurance Company of Alabama, Inc., a Corporation, A & Z Contracting Company, Inc., a corporation, Appellees.
No. B-64.
District Court of Appeal of Florida. First District.
September 24, 1959.
*479 Howell, Kirby, Montgomery & Sands, Jacksonville, for appellant.
Hazard & Thames, Jacksonville, for appellees.
STURGIS, Judge.
The appellant, Phoenix Indemnity Company, hereinafter sometimes referred to as the "surety," was surety on a performance and guaranty bond given under Section 255.05, Florida Statutes, F.S.A. by A & Z Contracting Company, Inc., hereinafter referred to as the "contractor," to the Board of Public Instruction of Alachua County, Florida, in accordance with the terms of a public works contract. Suit was prosecuted in the name of the Board against the contractor and surety to recover, for the use and benefit of Employers Insurance Company of Alabama, Inc., hereinafter referred to as the "insurer," the amount due to insurer for insurance premiums on workmen's compensation, public liability, and property damage insurance furnished by it to the contractor who, under the terms of the contract, was obligated to provide such insurance and furnish the bond before commencing work under the contract. By appropriate reference the contract was made a part of the bond.
It is provided by Sections 235.32 and 255.05, Florida Statutes, F.S.A., that a bond be given for performance of formal public works contracts.[1] The statute was designed not only to assure that the work is actually performed in accordance with and at the contract price, but also to protect the governmental agency against *480 involvement "in any expense," which comprehends, of course, the expense of defending actions that may be instituted to obtain payment for materials, supplies, or labor used directly or indirectly by the contractors or subcontractors engaged to perform the public works. And, as held in Fulghum v. State, 92 Fla. 662, 109 So. 644, it was also the broad legislative intent to afford to those supplying labor and materials on public works projects a means of protection in lieu of the lien afforded to them on private work as provided by other statutes.
In addition to the conditions prescribed by the statute (footnote 1), the bond herein was further conditioned that the contractor-principal should pay all bills for "services furnished to the principal in connection with the contract."
As stated, it was provided by the contract that the contractor furnish the mentioned insurance as a condition precedent to commencing work. It also required the contractor (1) to pay all payroll and materials bills and "other costs and liability incurred * * * in connection with the construction of the work," (2) to furnish, for use in making monthly progress payments to the contractor as called for under the contract, a complete schedule of materials, including the due proportion of expense and profit, to equal the total contract price, (3) to furnish a bond for 100% performance of the contract at the price stated therein, and (4) for payment of all persons supplying labor, material and supplies used directly or indirectly by the contractor or subcontractor (F.S. § 255.05, F.S.A.). The cost of the insurance was calculated and included as a part of the monthly progress payments made to the contractor.
It is not contested that the insurer performed "services" on behalf of the contractor, consisting of the investigation of claims, negotiating and handling settlements, and furnishing medical and surgical relief. These services evidently operated to protect the public agency from involvement in actions by workmen employed on the contract job.
The appellant surety moved to dismiss the complaint for failure to state a cause of action. Upon denial thereof, and there being no dispute as to the unpaid balance due by the contractor for the premiums of insurance or of the facts, final judgment was entered against the contractor who did not defend the action and is not a party to this appeal, and also against the surety who appeals therefrom.
While this is a case of first impression in Florida, it is the general rule that whether a surety for compensation will be held liable for unpaid insurance premiums depends strictly upon the terms of the bond as construed in the light of applicable statutes.
The appellant surety here insists (1) that it is the real party defendant in interest, (2) that its liability is distinct from that of the contractor, (3) that the bond is merely statutory, in that its primary purpose is to fill the void resulting from the inapplicability of the Mechanics' Lien Law (Chapter 84, Florida Statutes, F.S.A.) to public works, and (4) that since insurance premiums are not "materials" or "labor" or "supplies" within the purview of the Mechanics' Lien Law, they are not covered by the bond.
Appellee contends: (1) That assuming, per argumenti, the primary purpose of the statute (F.S. § 255.05, F.S.A.) is to fill the void resulting from the inapplicability of the Mechanics' Lien Law to public works, it does not limit the coverage contractable under a bond, that even the statutory bond extends coverage beyond the protection afforded by the Mechanics' Lien Law, and that the added coverage of the bond in suit is enforceable as a common law undertaking. (2) That coverage under the bond should be construed most strongly in favor of the beneficiaries. (3) That when insurance is required under construction contracts, the rule in Florida is that insurance *481 premiums as here involved are to be treated as part of the construction costs. (4) That by the terms of the bond the surety expressly assumed liability to pay such insurance premiums. (5) That "services", as comprehended by the bond, embrace the mentioned services of the insurer. (6) That again assuming, per argumenti, that the bond covers only items lienable under the Mechanics' Lien Law, payment of the insurance premiums would be covered on the premise that the insurer is a subcontractor within the definition of the Mechanics' Lien Law; this position being on the theory that the insured contracted to perform a part of the contractor's obligation  furnishing of the insurance  and thereby became a subcontractor within the meaning of the contract, as well as within the meaning of the Mechanics' Lien Law.
Section 255.05, Florida Statutes, F.S.A., does require coverage under the bond beyond the protection afforded by the lien arising under the Mechanics' Lien Law. The latter limits the lien to contractors dealing directly with the owner and such subcontractors, materialmen, and laborers as deal directly with the prime contractors, thus failing to provide protection for those furnishing materials and labor to the subcontractors. Richard Store Company v. Florida Bridge & Iron, Inc., Fla., 77 So.2d 632. Under Section 255.05, however, the coverage of the bond for public works contracts includes "labor, material and supplies, used directly or indirectly by said contractor, or subcontractors * * *," and it is immaterial whether the materials furnished are supplied directly or indirectly to the contractor or subcontractor. Kidd v. City of Jacksonville, 97 Fla. 297, 120 So. 556, citing McCrary v. Dade County, 80 Fla. 652, 86 So. 612, 614.
In the last case it was held that the phrase "supplying labor and materials in prosecution of the work" is not limited in meaning to the structure, building or thing produced in which the labor or material must actually enter and become an integral part. Adhering thereto, we hold that the liability of the surety for the insurance premiums involved in this suit must be construed in accordance with the terms and qualifications of the formal public works contract for the performance of which the bond was given, or in the light of the special circumstances under which the insurance was furnished. And as the bond in suit is conditioned to pay bills for "services" and to complete all "work comprehended by the contract free and clear of all liens for labor or materials, or otherwise," we are persuaded that it contemplates performances and a guaranty beyond those specifically required by F.S. Section 255.05, F.S.A.
Contracts of suretyship for compensation are to be construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect. They are regarded in the nature of an insurance contract and are governed by rules applicable to such contracts. The maxim that "sureties are favored in the law" has no application to contracts of suretyship by one engaged in the business for hire. The provisions of the bond should be considered as a whole and given that effect which was logically intended by the parties as shown by the entire instrument. Applying those principles to the admitted facts in this case, it is apparent that the contractor and surety knew that no work could be done under the contract until the insurance was provided, that premiums would be charged therefor, that the insurer would become obligated to perform services on behalf of the contractor, and that such services would be consumed in the course of the work in the same sense that other materials were consumed, such as electricity, steam, transportation, and the like, which are not physical and visible materials.
We recognize the word "services" as having a connotation distinct from "labor, material and supplies", although the latter may to some extent be connected with the former. *482 By the Mechanics' Lien Law the lien is imposed for the services of certain persons who usually are employed by the owner rather than the contractor, namely, architects, landscape architects, and engineers. F.S. § 84.02, F.S.A. The Mechanics' Lien Law also recognizes "services" of persons other than materialmen and laborers. Thus persons who enter into contracts with the contractor for performance of part of the contractor's work are defined as subcontractors and are provided with a lien for their "services". F.S. § 84.01, F.S.A. Under its terms, the contract in suit could not have been fulfilled without the "services" rendered by the appellee or some other insurer rendering a like service.
In the case of Pan American Surety Co. v. Board of Public Instruction, Fla., 76 So.2d 868, 870, a public works contractor received a progress payment at the end of the first month, in which was included the full amount of the insurance and bond premium, and then abandoned the work. The surety company then took up the construction and sued the School Board to determine whether any part of the progress payments had been improperly paid. Among the disputed items was the payment of the insurance and bond premiums. In disposing of this item the court said:
"It seems to us that under such a provision defining the relationship of the architect with the Board and the general contractor, the Board, in the absence of fraud, collusion, or other such consideration, was entitled to rely upon the `certificate of payment and statement of account' submitted by the architect and make payments thereunder, as to items that could be fairly said to be within the term `labor and materials complete and or stored on the job site,' but not as to items that were not fairly comprehended within the term. When viewed in this aspect, it is impossible to say that the entire amount of the insurance and bond premiums should have been included in the first progress payment, when, as the record shows, no actual construction work had been done at one of the job sites and, as to the other, only some foundation trenches had been dug, and consequently, no bond or insurance premiums had been earned."
And referring to a statute which authorizes progress payments on the basis of the work completed (F.S. § 235.33, F.S.A.), the court recognized that the contract authorized progress payments for materials stored on the job site, and said:
"While all of this may be true, it cannot be overlooked that the appellant became surety for the performance of the contracts on the basis of the contracts as written, permitting progress payments for materials as herein authorized without reference to statutory or other restrictions. Under these circumstances, we cannot be persuaded that it can evade responsibility for the performance thereof, even if it be conceded that the contracts were not within the strict limitations imposed by the statute. Columbia Casualty Co. v. Barry, 111 Fla. 517, 149 So. 567; 72 C.J.S. Principal and Surety § 37, p. 530. Cf. 72 C.J.S. Principal and Surety § 133, p. 623, for the rule applicable where statutory restrictions are in addition rather than contrary to contractual provisions."
The cited case recognizes that insurance is a proper element in the cost of schools and that it is to be paid for as a part of the progress payment under the statute "on the basis of the work completed."
Under similar contracts and bonds for the improvement of alienable private property the contractor's lien would unquestionably have included the cost of the insurance either in a fixed price contract or a cost-plus contract. In Johnson Electric Co. v. Columbia Casualty Co., 101 Fla. 186, 133 So. 850, 851, 77 A.L.R. 1, the court said:
"Under late methods of contracting, the subcontractor is quite as important *483 factor as the main contractor; the expense or bid on the main contract being primarily the aggregation of the bids of subcontractors and material men, with the fee, commission, or compensation of the main contractor added. On this theory the bonds like the one brought in question are designed to protect the subcontractor and material man.
"The very essence and purpose of these bonds is to save harmless the laborer, material man, and subcontractor, along with the main contractor and when so expressed they should be interpreted to effect this purpose. The early common law denied unequivocally any such right. It is one of the sources from which has sprung the business of the compensated surety, and in part explains why the rule of strictissimus juris has been minimized as to him."
We have considered the restricted rule stated in 164 A.L.R. 1468 to the effect that in the absence of express assumption of liability to pay insurance premiums, a bond limited in coverage to indebtedness for labor and material does not cover workmen's compensation or public liability insurance premiums. We do not think it applies in this case which is governed by the ancillary rule found in 129 A.L.R. 1092, to the effect that where the contractor is required by his agreement to maintain the insurance, the insurance premiums are covered by a contractor's bond that is conditioned upon the faithful performance of the contract and the payment of all the claims or debts incurred in connection with the performance of the contract, as is true with the bond in suit. Knox v. Ball, 1945, 144 Tex. 402, 191 S.W.2d 17, 164 A.L.R. 1453; City of Pittsburgh to Use of H.M. Kamin Agency v. Parkview Const. Co., 1942, 344 Pa. 126, 23 A.2d 847; United States to Use of Watsabaugh & Co. v. Seaboard Surety Co., D.C. Mont. 1938, 26 F. Supp. 681; Merchants Mut. Casualty Co. v. United States Fidelity & Guaranty Co., 1938, 253 App.Div. 151, 2 N.Y.S.2d 370; McFarland v. Rogers, 1936, 134 Me. 228, 184 A. 391; Davis Co. v. W.E. Callaghan Const. Co., Tex.Com.App. 1927, 298 S.W. 273; Southern Surety Co. v. Metropolitan Sewerage Commission, 1925, 187 Wis. 206, 201 N.W. 980, 204 N.W. 476; Building Contractors' Limited Mut. Liability Ins. Co. v. Southern Surety Co., 1924, 185 Wis. 83, 200 N.W. 770, 772.
In Building Contractors' Limited Mut. Liability Ins. Co. v. Southern Surety Co., supra, the court said:
"We have, however, in this case a contract requiring the contractor to maintain liability insurance sufficient to protect the owner against all claims for damages or injury to all persons engaged upon the work strictly in accordance with section 3327A of our statutes. And the bond guarantees that `the principal shall faithfully perform the contract on his part and satisfy all claims and demands incurred for the same.' Now it is evident that under such a contract it is just as essential for the contractor to incur obligations for liability insurance as it is for him to incur obligations for the procuring of labor and material in the construction of the building. It is familiar law that the contract and the bond given for the faithful performance thereof must be construed as one contract * * * That being so, the defendant obligated himself to pay any claim or demand which the contractor lawfully incurred and was required to incur in the prosecution of the work of the construction of the building. The premium for liability insurance was such a claim. The bond in question was given for a money consideration; it therefore has all the essential features of an insurance contract, and should be subject to the rules of construction applicable to such contracts * * *
* * * * * *
"So here the provision of the bond, `satisfy all claims and demands incurred for the same,' are broad enough to cover the premium for liability insurance, *484 which was necessarily incurred in the performance of the contract under its agreement with the board of regents of the normal schools."
In Davis Co. v. W.E. Callaghan Const. Co., supra [298 S.W. 274], the court said:
"The contract, the performance of which the bond guaranteed, expressly required the Davis Company to carry compensation insurance. This expense was one expressly authorized in the contract as one to be incurred in the performance thereof. Since the surety company agreed to pay any expense `incurred in the performance' of the contract, not otherwise expressly provided for, we think the bond does cover this compensation premium."
In McFarland v. Rogers, supra [134 Me. 228, 184 A. 391], the contractor was required to "maintain such insurance as will protect him from claims under Workmen's Compensation acts and from any other claims for damages * * *" The bond guaranteed the faithful performance of the contract and satisfaction of all claims and demands incurred for the same, as well as to pay for all equipment and material. It was held that where the contractor was required to carry the insurance, the premiums therefor were claims incurred in the performance of the contract for which the surety on the bond would be liable.
Considering the contract documents and the bond as a whole and according an active and objective purpose to the word "services" as used in the bond, distinguishable from the word "labor", or "material", or "supplies", as used therein, the trial court correctly held that the premiums payable for insurance furnished to the contractor are included in the coverage of the bond.
Affirmed.
WIGGINTON, C.J., and CARROLL, DONALD K., J., concur.
NOTES
[1] The pertinent part of F.S. § 255.05, F.S.A., provides:

"Any person entering into a formal contract with * * * [any] public authority, for the construction of any public building * * * shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor shall promptly make payments to all persons supplying him labor, material and supplies, used directly or indirectly by the said contractor, or subcontractors, in the prosecution of the work provided for in said contract; and any person, making application therefor, and furnishing affidavit to the * * * public authority, having charge of said work, that labor, material or supplies for the prosecution of such work has been supplied by him, and payment for which has not been made, shall be furnished with certified copy of said contract and bond, upon which, said person, supplying such labor, material or supplies shall have a right of action, and may bring suit in the name of the State of Florida or the city, county, or political subdivision, prosecuting said work, for his use and benefit, against said contractor, and sureties, and to prosecute the same to final judgment and execution; provided that such action, and its prosecution, shall not involve the State of Florida, any county, city or other political subdivisions, in any expense."