445 So.2d 1141 (1984)
GULF POWER COMPANY, Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, Appellee.
No. AT-272.
District Court of Appeal of Florida, First District.
March 6, 1984.
G. Miles Davis of Beggs & Lane, Pensacola, for appellant.
Roger W. Rizk, Howell, Liles, Braddock, & Milton, Jacksonville, for appellee.
SMITH, Judge.
Gulf Power Company appeals from a final summary judgment fixing liability of Insurance Company of North America on a payment bond in the amount of only $5,543.25. It urges that the trial court erred in rejecting its claim that the surety agreement, as specifically modified by a subsequent rider, obligated INA to pay instead $10,000.00. We agree and reverse.
On April 30, 1982, Gulf Power entered into a contract to provide electrical services to a third party, Willie James Brantley, d/b/a Westwood Bazaar. On that same date, INA issued a $5,000.00 payment bond in favor of Gulf Power for payment of any charges for electrical services incurred by Brantley, subject only to the conditions that the term of the bond was to be indefinite and that INA reserved the right to cancel the bond by giving thirty days notice.
Several months later, on September 9, 1982, INA and Brantley modified the surety agreement by attaching a rider changing the bond number and increasing the penal sum to $10,000.00. Four days later, however, Brantley filed for bankruptcy, at which time he was indebted to Gulf Power for $13,573.74. Of this total debt, $13,030.49 was due for services rendered prior to the modification of the surety agreement on September 9, and $543.25 for electrical services provided from September 9, 1982, through September 18, 1982. Gulf Power's demand for full payment of the sum of $10,000.00 was rejected by INA, and this litigation ensued.
INA contends, as it did before the trial court, that it is responsible only for that portion of the indebtedness owing from Brantley to Gulf Power prior to September *1142 9, 1982, not exceeding the $5,000.00 penal sum provided by the original surety agreement, and for the electrical charges incurred by Brantley on or after September 9, 1982, to the extent that those charges do not exceed the sum of $10,000.00. The trial court agreed, finding that the rider served to increase the coverage of the bond from the penal sum of $5,000.00 to the sum of $10,000.00 effective only as to charges incurred by Brantley on or after September 9, 1982.
There seems to be no question that INA could expressly provide that the $5,000.00 in increased coverage afforded by its rider should apply only to those debts incurred after September 9, 1982. The issue, then, is whether the original policy and rider, when construed together, so limit its coverage. In this regard we must observe that contracts of surety are regarded as analogous to contracts of insurance, and are to be strictly construed against the surety and in favor of the obligee. See, Travelers Indemnity Company v. Mercer, 250 So.2d 283 (Fla. 4th DCA 1971); Phoenix Indemnity Company v. Board of Public Instruction, 114 So.2d 478 (Fla. 1st DCA 1959).
While we can find no direct authority regarding a rider to a surety contract, it seems well settled that language contained in a rider to an insurance policy will not be extended to affect other provisions of that policy that are not expressly mentioned in the rider. National Auto Insurance Association v. Brumit, 98 So.2d 330 (Fla. 1957).
In the absence of an express intent that provisions of the rider or slip should supersede similar provisions of the policy, the terms of the rider or slip will be regarded as original terms which do not affect any of the existing terms of the contract.
Couch on Insurance 2d, § 4:28 (1959). Here, the rider specifically notes that "[n]othing contained herein shall vary, alter or extend any provision of the bond other than as above stated," and the only material change or conflict between the original contract and the rider is the amount of coverage. And while it may be that INA intended the rider to be effective in the increased amount only for those charges incurred after the date it was signed, there is nothing in the rider so limiting it. Faced with this ambiguity, and in light of the above principles, we can but conclude that the law regards the effective date of the original contract as the effective date of the rider. Therefore, the increased coverage afforded by the rider is to be applied to those charges incurred by Brantley prior to September 9, 1982. To find otherwise would be treating the original contract and rider as two separate and divisible contracts, a result not countenanced by the law or the very terms of the rider itself.
REVERSED and REMANDED for further proceedings consistent with this opinion.
WIGGINTON and NIMMONS, JJ., concur.